JESSE FOGG & another *vs.* JOHN PEW.

Conversations before the organization of a corporation, but in contemplation thereof, between persons who subsequently become officers and stockholders therein, are inadmissible against the corporation as evidence of an agreement to organize and transact business as a corporation without paying in the capital required by law; even if accompanied by evidence that the capital stock was afterwards pretended to be, but was not actually, paid in.

Neither the return which an insurance company are obliged by law to make to the secretary of the Commonwealth, nor a contract between them and their agent, is admissible in an action upon a premium note given to them, to show that the company fraudulently held themselves out as solvent, or that their officers were aware of their insolvency; without evidence that these facts were known to the maker of the note, or influenced him to procure the insurance.

Declarations of an agent of an insurance company, who has authority only to obtain applications for insurance and transmit them to the company, are inadmissible to show that the company represented that their capital stock was paid in, when it was not.

Fraudulent representations of the officers of an insurance company, concerning the solvency of the corporation and the payment of their capital stock, are no defence to a suit upon a premium note given to the company, unless these representations were held out at the time when the note was made, and for the purpose of obtaining it.

ACTION OF CONTRACT by the assignees in insolvency of the Metropolitan Fire and Marine Insurance Company, upon two promissory notes respectively made on the 5th and 21st of April 1854, and payable in nine months, for the premiums on two policies of insurance which terminated on the 30th of November 1854.

Answer, 1st. That the insurance company were insolvent at the time of issuing the policies, and continued so during the whole term of the risks; and that the officers of the company knew this, and intended to defraud the defendant, and did in fact deceive and defraud him; 2d. That the company became insolvent by the fraud of their officers, after making the policies; 3d. That no part of the capital stock of the company was ever paid in according to law; 4th. That the capital stock, if paid in, was never invested according to law.

At the trial in the superior court of Suffolk at November term 1856, before *Abbott*, J., the defendant, for the purpose of showing that the capital stock of the insurance company was never paid in, was permitted, against the plaintiffs' objection, to intro-

duce evidence of conversations between persons who afterwards became officers and stockholders in that corporation — both before their charter was obtained, but in contemplation thereof; and after the charter was obtained, but before the corporation was organized under it — as tending to show a concert and agreement among them (afterwards carried into effect) to organize the corporation, and transact business, without actually paying in the capital.

Evidence was offered tending to show that the capital stock was subscribed for and paid in by instalments before the date of the policies to the defendant.

The defendant introduced evidence tending to show that no part of the capital stock was actually paid in, so as to be within the control of the corporation, whatever might be the statement as to such payment on the books of the corporation; that said pretended payment was merely colorable and fraudulent, and made for the purpose of inducing the public to believe the capital was paid in, when in fact it was not; that the payments were made by the stockholders, the larger part in amount of whom were also directors, on the opening of the office of the company; that as soon as the money was counted by the secretary, by ascertaining the amounts on the wrappers inclosing the bills, it was taken possession of by the treasurer of the company, who was also president; and that it was immediately returned to the stockholders paying it, in pursuance of an arrangement for that purpose between said president and treasurer and said stockholders. The evidence also tended to show that none of the directors or officers of said company, except the president and treasurer, ever had any control of the money so paid in, or knew how it was used or invested; and that those directors of the company who resided in Boston had no knowledge of the transactions aforesaid, in reference to the payment of the stock, but supposed that it had been paid in. To this and all evidence in reference to the payment and investment of the capital stock of the company, the plaintiffs objected, upon the ground that, if there was fraud in this respect, it was the fraud of the president and treasurer, and not of the company, and the

defendant could not avail himself of the non-payment of the capital in defence to this action ; that he was precluded from it by taking the policies and giving the notes in suit to the corporation, and also by the fact that the plaintiffs were assignees under an assignment made in pursuance of the insolvent laws of this commonwealth, which was conclusive evidence of their right to sue ; and that the corporation were regularly authorized to transact business, and did in fact pay their contracts, till some time after the making of the defendant's policies. But the court admitted the evidence.

The defendant was also permitted, against like objection, to put in evidence the return made by the insurance company to the secretary of the Commonwealth, as required by law, in December 1853, and sworn to in March 1854, for the purpose of showing the condition of the corporation at that time, and that they held themselves out to the world as having their capital stock paid in.

The judge also, against the plaintiffs' objection, admitted in evidence, for the purpose of showing that the company were insolvent and that their managing officers knew it, a contract between the company and their agents in New York, (appointed " to take applications, countersign policies, and collect premiums, with authority to make the same binding upon this company,") in reference to the terms upon which insurances were to be made by the agents, and the compensation for their services.

Evidence was introduced that the policies were obtained through one Dolliver, an agent of the insurance company to receive applications for insurance only, and transmit them to the company, and who did receive and transmit the defendant's applications. The defendant, against the plaintiffs' objection, was allowed to testify that before making the applications to Dolliver he asked him what the capital stock of the company was, and whether it was paid in, and that Dolliver replied that it was all paid in and invested, and the defendant was induced by these representations to make the applications and take the policies.

The judge, among other instructions to the jury, gave the fol-

lowing: " If the Metropolitan Insurance Company, at the times of making the policies on which the notes in suit were given, were in fact insolvent, and did not possess the ability and means to indemnify against the losses which might happen on said policies, and this was known to the officers of said corporation, who made said contracts on their behalf, or any of them, and was not known to the defendant; and said officers did any acts or made any representations for the purpose of concealing their condition, and inducing the defendant to believe in their solvency and ability to perform their contracts, and so to insure with them : and he was deceived by said acts and representations, and induced by them to take the policies and give the notes in suit for the premiums ; then he would not be liable for said notes, unless, after knowing said facts, he had affirmed the policies by claiming under them as valid contracts.

" In reference to the character and nature of the acts and representations to be proved, and the circumstances under which they must be made on the part of the company, it would be sufficient to show them done or made publicly or to a third person, if done or made for the purpose of defrauding and deceiving all who might deal with them, provided such acts or representations became known to the defendant, and he was deceived by them, and so induced to make the notes in suit.

" But mere insolvency on the part of the company, although known to its officers, without any acts done or representations made for the purpose of concealing or deceiving as to their true condition, would not be sufficient to defeat a recovery in this case, although the defendant might have believed in their solvency at the time of contracting with them, and although he would not have entered into such contracts but for such belief.

" If the capital of said company or any part thereof had never been paid in according to law, and the officers of said corporation had represented and held out to the world that it had been so paid in, for the purpose of inducing persons generally to insure with them, which representations came to the knowledge of the defendant, and he, relying on them, had been thereby induced to make the contracts of insurance with them, for which

he gave the premium notes in suit; the existence of such a state of facts would constitute a defence in this action, provided the defendant never affirmed the contracts after knowing the facts aforesaid, and the corporation were insolvent at the time of making said policies, or became so before the expiration of the risks insured against in the same.

" The burden of proof was on the defendant to establish that no part of said capital stock was ever paid in, and all the other propositions embraced in the aforesaid instructions."

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*W. R. P. Washburn & G. W. Smalley,* for the plaintiffs.

*R. H. Dana, Jr.,* for the defendant. 1. The evidence of conversations, before the organization of the corporation, but in contemplation of it, between those who afterwards became officers and stockholders in the corporation, and who were the contracting officers at the time of making these policies, was rightly admitted, in connection with evidence of the manner in which the pretence of paying in the capital was gone through with, (which necessarily involved the officers,) and with evidence that the plan was carried into effect in manner and form. It involved the same false representations which constituted the defence, and formed part of the chain of proof; and only carried back to an earlier period evidence of a fraudulent design, subsequently carried out. *Cook* v. *Moore,* 11 Cush. 213.

The evidence of the pretence of paying in capital was admitted only as a part of the proof that no capital was paid in, and that a false representation to the contrary was made to the defendant.

2. The return of the secretary of the company was admitted as part of the proof of false declarations, and available to the defendant, under the instructions given to the jury, only upon proof that he knew and relied upon them.

3. The contract of the company with their agents in New York was the act of the insurers, tending to show that they knew that they were insolvent.

4. The statements of Dolliver could not, under the instruc-

35 *

tions given, be regarded by the jury, unless he was an officer or agent authorized to contract and make statements, or was a third person through whom the false representations were made to the defendant by the insurers.

5. The instructions required the defendant to prove that the insurers were and continued insolvent, or failed to pay in any part of their capital, or failed to invest it according to law; and that they represented the contrary, knowing it to be untrue, for the purpose of procuring contracts of insurance, either to the defendant directly or through a third person, and that he knew of these representations and relied upon them. The ruling indeed went too far in requiring proof of actual fraudulent intent; which was not necessary, if the representations were known to be false, and were naturally calculated to mislead a person who had a right to rely upon them.

No evidence of anything subsequent to the date of the notes was admitted, unless as tending to prove a fact existing before that time.

Bigelow, J. Several of the rulings, to which exceptions were taken in the course of the trial of this case, were erroneous.

1. Evidence of conversations between divers persons, which took place before the act incorporating the company of which the plaintiffs are assignees was passed, was clearly incompetent. The corporation certainly could not be bound by the declarations of persons, made before they had any existence, and the plaintiffs as assignees stood in the same position as the corporation. A party cannot be affected by any statements, unless they are shown to be made by him or by some one authorized to speak in his behalf. The fact that the persons whose declarations were admitted were subsequently officers or stockholders in the corporation did not show any adoption or ratification of these previous statements by the corporate body after its creation and organization. Nor was it even made to appear that they were known to those who constituted the majority of the stockholders of the corporation, and who took part in its establishment and organization. Under these circumstances, we are at loss to see on what possible ground such evidence could be held to be admissible.

2. The return made by the corporation to the secretary of the Commonwealth, in compliance with the provisions of the statutes, was irrelevant and immaterial to the issue before the jury, unless accompanied by further evidence that the defendant saw or knew of such statement, and was thereby deceived, and entered into contracts of insurance with the corporation, relying in some degree on the statements which it contained. The corporation were entitled to enforce contracts made by the defendant with them, notwithstanding their insolvency, unless he had been induced to enter into them by some fraudulent misrepresentations which were intended and allowed by the corporation to operate on his mind; and it was wholly immaterial that they had made false statements in their returns to the secretary, unless in some way they were brought home to the defendant, and were suffered to influence him in signing and delivering the notes in suit. *Alliance Mutual Ins. Co.* v. *Swift,* 10 Cush. 433.

3. The same reasons are applicable to the contract offered in evidence, between the corporation and their agents in New York. There was no evidence offered to show that the defendant had any knowledge of the existence of such a contract; and if he had known of it, we do not see that it tended to prove the fact of the insolvency of the corporation, for which purpose i was admitted. It was certainly very slight and remote evidence to prove the fact.

4. Evidence of the declarations of Dolliver was incompetent. He was a special agent only, with a limited authority to receive and transmit applications for insurance to the corporation. By virtue of such agency, he had no authority to make declarations concerning the condition of the company or the payment of their capital stock. The power of an agent to speak for his principal is confined strictly within the scope of his authority. 1 Greenl. Ev. § 113. Any statements concerning matters beyond this are hearsay and inadmissible.

5. The instructions to the jury were in one respect deficient in accuracy, and tended to mislead them. It was not a sufficient defence to the notes declared on, that the corporation had

at some previous time made false and fraudulent representations concerning their solvency and the condition of their capital stock, for the purpose of inducing persons generally to deal with them, unless such representations were held out at the time when the defendant gave the notes, and to induce him to give them. .This qualification was omitted. As the case was left to the jury, they might have found a verdict for the defendant on the ground of false statements or inducements, although they were not shown to have been continued or authorized when the defendant entered into the contracts of insurance in consideration for which the notes were given. The corporation through its agents may have been guilty of falsehood and fraud to other persons at other times. But they were not to be held responsible therefor in this action, unless it was proved that the circumstances were such as to lead to the inference that such misrepresentations were intentionally allowed to operate on the mind of the defendant in inducing him to execute and deliver the notes on which the plaintiffs now seek to recover judgment.

*Exceptions sustained.*