# Sunbury Fire Insurance Company versus Humble.

1. Where the general agent of an insurance company makes false statements to a local agent in regard to the condition of the company, and the latter, believing such statements, repeats them to a third party, thereby inducing him to take out a policy of insurance in the company, the insured may set up the misrepresentations as a defense to an action by the company on his premium note.

2. In such an action, testimony to the effect that certain other officers of the company, in the presence of the general agent and of the witnesses, reiterated the false statements made to the local agent and

endeavored to prove the same, is admissible evidence on the part of the defendant.

May 5th 1882.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Schuylkill county:* Of January Term 1882, No. 292.

Assumpsit, by the receivers of the Sunbury Fire Insurance Company, in the name of the company, against Thomas Humble, to recover an assessment levied by the receivers, under an order of court, upon the policy-holders in the mutual department of said company, for the payment of losses by fire, and officers' salaries.

On the trial, before GREEN, J., the following facts appeared :—The company, plaintiff, was originally incorporated, March 21st 1868 as "The Sunbury Cattle Insurance Company." By the act of April 1st 1870 it was authorized to insure property of all kinds on the mutual plan; the act providing that a joint stock capital should be subscribed not to exceed $200,000, to be invested in real estate.

In 1873, upon application to the Court of Common Pleas of Schuylkill county, the name of the company was changed to "The Sunbury Fire Insurance Company," and power given it to insure property on the cash plan, in addition to the mutual, on condition that the capital stock should be $200,000, of which fifty per cent. should be paid in before the certificate of change was granted by the court.

In 1876, at the suggestion of the attorney-general, the Court of Common Pleas of Dauphin county dissolved the corporation on the ground of insolvency, and receivers were appointed, who, under an order of court, levied an assessment upon premium notes of the members, as aforesaid.

The defendant introduced evidence of the following facts:— That Hiram Price, who was an agent of the company, acting within the scope of his authority, requested John C. Garner to act as local agent, informing him that the company had a paid-up capital of $200,000, was solvent and had never levied an assessment. Garner, believing these representations, consented to act as agent, and in pursuance of his duties as such, made similar statements in regard to the company to Humble at the time he took out his policy, adding that he (Garner) believed the company to be good and sound. After ascertaining that these representations were false, Garner collected the policies which he had procured, and sent them back to the company for cancellation. Whether Humble's policy was returned with the others was one of the points in dispute.

The defendant offered to prove that certain officers of the

company in the presence of Price restated to Garner that the condition of the company was as represented by Price, which fact they endeavored to demonstrate by reference to books and papers. This for the purpose of showing, that these representations were made by Price with the assent and authority of the company. Objected to by plaintiffs. Objection overruled and evidence admitted. (First assignment of error.)

Plaintiffs requested the court to charge, inter alia, as follows:

1. If the statements made by John C. Garner to the defendant were believed by him, and he made them in good faith, it would not be a fraud on his part, and if it is true, as said Garner testified, that the defendant took the insurance and gave his premium-note on the belief expressed by Garner that the company was good, and if the defendant made his application and gave his premium-note on the faith of the opinion expressed by Garner, then the representations made by Garner as to the condition of the company, would be immaterial and the plaintiff would be entitled to recover.

Answer. It is true as a general principle, that if the party relied upon mere opinion, and not upon the false representations made, he cannot set up the falsity of the opinion in order to avoid the contract, and to that extent we affirm this point. But if the jury find that false statements as to matters material were made by the company to Garner, as to the condition of the company, with the design of making him believe that it was a good company, and so that, as agent of the company, he should express that belief to others and thereby induce them to take policies in the company, this would be such a fraud upon the defendant as would avoid the policy, if this was the inducing cause of the taking of the policy, and particularly, if the false statements communicated to the agent, were by him communicated to the defendant. (Second assignment of error.)

2. That the statement made by Garner that the company had a paid-up capital of $200,000 could not and did not mislead or defraud the defendant, because the Act of 1870, creating a capital stock for this company, provided it should be exclusively invested in real estate, and that the stockholders should have the first lien upon the same—and hence this real estate was not applicable to payment of fire losses.

Answer. Refused. (Fourth assignment of error.)

The court further charged the jury, inter alia, as follows:

" As a matter of law we say to you that, if you find that false statements as to material matters were made by the company to Mr. Garner, as to the condition of the company, with a design of making him believe that it was a good company, so that, as an agent of the company, he would express that belief to others, and thereby induce them to take policies in the company, then.

4 OUTERBRIDGE.—32

it would be such a fraud on the defendant as would vitiate the policy, if such statements made to the agent were by him communicated to the defendant, and they were the inducing cause of his taking the policy. If the agent himself was deceived by the company, or its authorized agent, so that he himself might, in turn, deceive others, and they appoint him agent so that he might add the weight of his character or opinion in the attempt to deceive others, if this was the design of the company in making this appointment and these representations, then we think that, where the agent, on the strength of those false statements made to him, represented to the insured and gave it as his opinion, based upon those false representations so made to him, that it was a sound company, the insured would have a right to take advantage of such false representation to avoid the policy, even though he were to swear that it was the opinion of the agent as to the character and solvency of the company that induced him to take his policy." (Thirteenth assignment of error.)

Verdict and judgment for defendant, whereupon plaintiff took this writ, assigning for error the admission of testimony above noted, the answers to his points, and the portion of the charge above quoted.

*James Ryon* (with whom was *William A. Marr*), for plaintiff in error.—A false representation, in order to have the effect of a fraud, must relate to a substantial matter of fact, coupled with an intent to deceive on a material point, and be the means which produced the contract. If the defendant acted on the opinion of the agent, no matter for what reason, then he was not induced to enter into the contract by the alleged misrepresentation of fact: 2 Pars. Cont. 275 ; Sandford *v.* Handy, 23 Wend. 260 ; Phipps *v.* Buckman, 6 Casey 401; Huber *v.* Wilson, 11 Harris 178.

*G. R. Kaercher* (with whom were *M. M. L' Velle* and *John W. Ryon*), for defendant in error.—The rulings of the court upon the effect which should be given to the false representations made by Price, in regard to the condition of the company, submitted the question properly and fairly to the jury, who practically found that the false statements were made to Garner, and by him communicated to Humble, who was thereby induced to accept a policy in the company. A mutual insurance company cannot cause false and fraudulent representations to be made by its agents, and enforce the contract thereby obtained against the party who rescinds it upon the discovery

of the fraud : Lycoming Insurance Company v. Woodworth, 2 Norris 223.

Mr. Justice PAXSON delivered the opinion of the court October 5th 1882.

The evidence referred to in the first assignment of error was offered for the purpose of showing that the representations made by Mr. Price in the preceding January were made by and with the authority of the plaintiff company, and assented to by it as correct. We think the learned judge was right in admitting it. There was abundant evidence to show that the company was a fraud from its inception, and there was ample evidence to submit to the jury that it deceived its agents as to its financial condition, in order that they in turn might deceive innocent parties who desired to insure their property. In this connection it is proper to say that it matters little what were the powers of the agent who made the fraudulent representations by means of which the defendant was induced to take his policy, nor whether the agent himself believed them to be true. The company having accepted the policy, is affected with any fraud on the part of the person in obtaining it. In other words, it cannot repudiate the fraud and yet retain the benefit of the contract. It takes it cum onere. This is familiar law. See Jones v. The National Building Association, 13 Norris 215, and authorities there cited.

The remaining questions in the case need not be discussed at length. The court could not properly say to the jury, as requested by the plaintiff's second point, that Garner's statement that the company had a paid-up capital of $200,000 could not have deceived or injured the defendant. This was not a question of law, but a question of fact, and was properly submitted to the jury. The reason given by the company in support of its position is so remarkable that I insert it here without comment. It is: " Because the act of 1870, creating a capital stock for this company, provided it should be exclusively invested in real estate, and that the stockholders should have the first lien upon the same ; and hence this real estate was not applicable to the payment of fire losses."

No errors are perceived either in the answers to points, or in the general charge, and the questions of the cancellation of the policy, and the legality of the assessments, were submitted to the jury under proper instructions.

Judgment affirmed.