# NEW ERA LIFE ASS'N v. MARY WEIGLE.

ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 23, 1889—Decided October 7, 1889.
[To be reported.]

1. In negotiating a contract for insurance, the insurer and insured are bound to deal fairly and honestly with each other, and any concealment or misrepresentation material to the risk, on either side, is a ground of relief from the contract thus obtained.

2. An untrue representation by the agent of a company, to a person negotiating for a policy therein, that the company is in good financial condition and has a paid-up capital of $50,000, whereby the applicant is induced to take a worthless policy in it, is a fraud rendering the contract voidable.

3. The fact that by the terms of the policy the death claim upon it is to

be restricted to the amount actually collected by mortuary assessments upon other policies, does not render such fraudulent misrepresentation as to the capital of the company immaterial.

4. Nor does the fact that the stock of such company is held by persons who at the time are of sufficient financial ability to meet calls for the unpaid portion of the capital, render immaterial an untrue representation that the whole of the capital stock has actually been paid in.

(a) On the trial of an action there was uncontradicted testimony that the defendant was induced to enter into the contract in suit by a misrepresentation of fact. The plaintiff did not ask that this testimony be submitted to the jury, but presented a point which virtually conceded the misrepresentation and requested the court to charge that it was immaterial.

5. In such circumstances, the court should not be convicted of error in failing to submit to the jury the question of the credibility of the testimony respecting the alleged misrepresentation, although it would have been proper for it so to do, had there been a request for such submission upon the trial of the cause.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 70 July Term 1889, Sup. Ct.; court below, No. 106 April Term 1888, C. P.

To the number and term of the court below, Mary Weigle filed her appeal from the judgment of a justice of the peace, in an action brought against her by the New Era Life Association of 1876, for the use of J. M. Wiestling, receiver of said association. On December 7, 1888, the plaintiff filed a statement of claim in assumpsit, to which the defendant pleaded, non-assumpsit, non-assumpsit infra sex annos, payment and set-off.

At the trial, March 1, 1889, the following facts were shown:

On November 4, 1878, Mary Weigle signed an application for membership in the New Era Life Association of 1876, a company incorporated under the act of April 29, 1874, P. L. 73, and for insurance to the amount of $3,000 upon her life, designating her son, John M. Hamme, as the beneficiary to whom the same should be payable. The application, containing the usual questions and answers, with a warranty as to the truth of the latter, was presented to the association on November 5, 1878, and on the same day it was approved, and the association delivered to the defendant a certificate of insurance under its corporate seal, reading as follows:

" This Indenture Witnesseth, That Mary Weigle of York, in the county of York and state of Pennsylvania, has made application for membership in this association (application No. 701, dated the fourth day of November 1878), and has paid into the treasury the sum of thirty (30) dollars, and covenanted and agreed to pay to said association annually the sum of nine (9) dollars, on the 5th day of November each and every year, commencing on the 5th day of November, 1879 and continuing so long as the said Mary Weigle shall live ; and has further covenanted and agreed to pay this association, from time to time, such mortuary assessments as may be required to liquidate all bona fide benefit claims accruing against said association by the decease of members, levied in accordance with the covenants aforesaid, and as per table, within thirty days after notice.

" In consideration whereof, the New Era Life Association of 1876 have undertaken and promised, and, by these presents, covenant and agree, at the expiration of sixty days after said association shall have received reasonable and satisfactory proof of death of said Mary Weigle, to pay or cause to be paid unto John M. Hamme or his heirs and legal representatives, the sum of three (3) dollars for every $1,000, maximum sum of benefit actually in force in this association upon the decease of the said Mary Weigle and upon which the mortuary assessments are paid; provided, the amount so paid shall not exceed the maximum sum of three thousand dollars.

" Conditions which shall release this association from all liability :—Any misstatement or concealment of any fact touching the health, occupation, or material to the question of longevity of the said Mary Weigle from his application, or any omission or neglect to pay the annual dues on or before the time stipulated in this certificate; or any omission or neglect to pay any of the mortuary assessments for a period of thirty days after notice ; or any change of residence and post-office address of the person who is to pay the annual dues and assessments, without notice to the association ; or if the said Mary Weigle shall enter into any military or naval service, or engage in the manufacture of gunpowder, fireworks, or other explosive ammunition, or in submarine operations ; or shall, without first having obtained consent of this association in writing, reside in South America, Africa or Asia, or in any locality within the

tropics, or travel therein, except on ocean steamers or first-class sailing vessels,—in any or either event, or happening of the aforesaid contingency, this certificate shall thereupon become void."

The insurance under this certificate became forfeited on June 20, 1882, by reason of the failure of Mrs. Weigle to pay mortuary assessment No. 12 levied against her. Prior to the forfeiture, however, death losses were met with by the association, to provide for the payment of which it levied after the forfeiture had taken place four additional assessments. These all remaining unpaid, this action was brought by the receiver of the association, which was then insolvent, to recover them.

The defendant, being called as a witness on her own behalf, testified that she was induced to sign the application for insurance by the representation of Eneas Smith, agent of the association, that it had a paid-up capital of $50,000, from which she understood that it was a first class company and there would be nothing for her "to pay afterwards;" that this representation was made to her in the tailor shop of J. Leonard Kable, where she was employed at the time, and in the presence of Mr. Kable; and that if this statement had not been made to her by Smith, she would not have signed the application. J. Leonard Kable, being called for the defendant, testified that at different times he had heard Eneas Smith tell the defendant that the New Era Life Association was in first class financial condition, and that he heard him say to her immediately before the application was signed by her that the company had a paid-up capital of $50,000.

Dr. William Malin, called for the defendant, testified that he was the secretary of the New Era Life Association and a stockholder therein, and that on November 4, 1878, it had a capital stock of $50,000, but it was not all paid up.

In rebuttal the plaintiff recalled Dr. Malin, who then testified that he was unable to say what amount of the capital stock of the association was paid up; that the persons who held the stock were men of large means, and that in his opinion the unpaid portion thereof could have been collected at any time.

At the conclusion of the testimony, the court, LATIMER J., charged the jury in part as follows:

This suit which you are empaneled to try is an action brought by the New Era Life Association of 1876, against Mary Weigle, the defendant, to recover from the said Mary Weigle the amounts of five assessments that were made on a policy of insurance in this company, held by her, to pay death losses which occurred during the currency of her policy. . . . . .

The defence on her part against the payment of those assessments is, in effect, that she was induced to sign this application and become a member of this organization, by certain false and fraudulent misrepresentations of the condition and character of the company, made to her by the company's agent at the time that he secured her signature to the application.

She has testified, and J. L. Kable, a witness called on her behalf, has testified, that at and before the time that she signed this application, it was represented to her by one Eneas Smith, the then agent of the company, that the New Era Life Association had a paid-up capital of $50,000, and she has sworn that she would not have signed that application except for that inducement. There is no evidence in the case to contradict her testimony. J. L. Kable has testified also to the same representations that were made to her, and that she says were made to her.

Now, if you believe her testimony, and there is nothing in the case to contradict it, it stands uncontradicted, then she was induced by false and fraudulent representations to become a member of this society; for Dr. Malin, an officer of the company, and a director, has testified that while the company had a capital stock of $50,000, it was not nearly all paid up at the time that this application for insurance was made, and I tell you that the representations which she says were made to her and induced her to sign the contract are material, and that if they were the inducements, that would avoid any liability on her part to comply with the contract that she entered into, and she is not liable to pay the receiver of the association the assessments Nos. 17 and 18, which she would otherwise be liable to pay, and [therefore on the case as it stands your verdict will be for the defendant.] [3]

Points have been presented to me embodying the views of the law entertained in this case by the plaintiff and the defendant respectively, and I have been requested to charge you

in regard to them, and I will read them to you, and give you my answer. The plaintiff has requested me to charge the jury as follows:

1. It appearing by the uncontradicted testimony in the case, that the representation which is set up as a bar to the recovery was immaterial, and in no wise affected the financial standing of the company at the time it was made, it was not such a representation as would amount to fraud, or prevent a recovery, and the court is requested to so instruct the jury as a matter of law.

Answer: I answer that this point is not correct.[1]

The defendant has requested the court to charge:

1. That if the jury believe from the evidence that the defendant was induced by Eneas Smith, its agent, to sign the application for insurance in this case, by representing to her that said company was a first class company, financially, having a paid-up capital of $50,000, and that said representations were false, it was such a fraud on part of said company's agent as affected the plaintiff's claim in this suit, and the verdict must be for the defendant.

Answer: I say that this point of the defendant is correct.[2]

The jury returned a verdict in favor of the defendant. Judgment having been entered on the verdict, the plaintiff took this writ, assigning for error:

1. The answer to plaintiff's point.[1]
2. The answer to defendant's point.[2]
3. The part of the charge embraced in [  ][3]

*Mr. E. D. Ziegler* (with him *Mr. Robert Snodgrass, Mr. Frank Geise* and *Mr. J. R. Strawbridge*), for the plaintiff in error:

1. The alleged misrepresentation, that the corporation plaintiff had a paid-up capital of $50,000, was not per se such a fraud upon the defendant as would avoid the contract, as it appeared that although the capital was not all paid up, the stock was at that time all held by persons who were able to pay, whenever the uncollected part of the capital might be needed. Being thus an available asset which could be realized at any time, the financial standing was not affected or im-

paired by its non-payment, and consequently the defendant could not have been deceived, in any legal sense, by Smith's statement.

2. The insurance contract with Mrs. Weigle was a purely mutual one, by the express terms of which the death losses were restricted to the amount which might be realized out of the assessments upon surviving members: Seitzinger v. New Era Life Ass'n, 15 W. N. 348. The capital stock, therefore, could not in any event be required to respond for losses occurring upon mutual policies, but was presumably reserved to respond for losses under the other forms of insurance, in which the association was authorized to engage by § 28, act of April 29, 1874, P. L. 84. The alleged misrepresentation was therefore entirely immaterial, as it did not matter, so far as the value of Mrs. Weigle's contract was concerned, whether the corporation had any capital at all or not. The case here presented is entirely unlike Sunbury F. Ins. Co. v. Humble, 100 Pa. 495, relied on by the defendant.

3. There was error in taking the case away from the jury and giving binding instructions for the defendant. Upon the refusal of the plaintiff's point, the entire defence was resolved into questions of fact which were for the jury alone, and the court should then have submitted to them two questions: (1) whether the alleged misrepresentation was in fact made, and (2) whether, if so, it was material as an inducement to enter into the contract. The witness Kable, when first called, made an unequivocal statement that the words used by the agent were that the corporation " had a capital stock of $50,000," and this was shown to be literally true. It was not until he was afterwards recalled that he said the agent represented the capital to be paid up. The effect of this was to raise a doubt as to what the agent actually said, which could only be resolved by the jury. But even independent of this, the question of materiality should have been submitted to the jury, as in Sunbury F. Ins. Co. v. Humble, 100 Pa. 495.

*Mr. H. L. Fisher* (with him *Mr. A. N. Green*), for the defendant in error :

1. There is no distinction between the facts of this case and those of Sunbury F. Ins. Co. v. Humble, 100 Pa. 495. But if

it be conceded that there is, the argument for the plaintiff ignores the circumstance that Mrs. Weigle was kept in ignorance of the facts, was allowed to infer from the representation made to her that the security of the policy she was bargaining for would be enhanced by the corporation's paid-up capital of $50,000, and was thus fraudulently entrapped into paying her money for this worthless policy. If the false representations induced the defendant to enter into the contract, this fact constitutes their materiality.

2. The association cannot repudiate the fraud of its agent and yet retain the benefits of the contract: Jones v. Nat. Building Ass'n, 94 Pa. 215; Musser v. Hyde, 2 W. & S. 314; Hunt v. Moore, 2 Pa. 105; Mundorff v. Wickersham, 63 Pa. 87; Keough v. Leslie, 92 Pa. 424; Bennet v. Judson, 21 N. Y. 611. And it matters not that the agent had no authority to make the representation: Lycoming F. Ins. Co. v. Woodworth, 83 Pa. 223. If we are right as to the law of the case, there were no material facts to be submitted to the jury.

3. That the agent made the false and fraudulent representation in question, was not denied. Confessedly it was made. The plaintiff's point virtually concedes this. The argument as to a supposed discrepancy in Mr. Kable's testimony is a mere quibble. It simply appears that, as any honest witness might do, he inadvertently omitted the words " paid-up " from his testimony, and, upon his attention being called thereto, asked to correct the error on the spot, though saying he felt sure he had used those words originally. This was not sufficient to " raise a doubt " as to what the agent said, or require a submission to the jury.

OPINION, MR. JUSTICE WILLIAMS:

The rights and obligations of insurer and insured are reciprocal. Each is bound to deal fairly and honestly with the other, in the procurement of the contract for insurance, and any concealment or misrepresentation material to the risk on either side may properly be urged as ground of relief from the contract thus unfairly and fraudulently obtained. The application and policy now before us bristle with the requirements laid upon the applicant. A full disclosure of every circumstance material to the risk is required in writing, and an express covenant that

all the statements so made are true is added, which contains among many other provisions the following: " I hereby covenant and agree that the above answers are true ; that a misstatement or concealment of any fact touching my health or material to the question of longevity," etc., shall render the policy null and void.    The other side of the negotiations, the misstatements and concealments of facts "touching the health or material to the longevity" of the insurance company are not provided for. There is no express covenant that the representations of the experienced and persuasive solicitor shall be true.    The insured is largely at his mercy, for he has ordinarily no other means of information in regard to the company, the contract, and its value to himself or his family, than that which the interested agent affords him.    He represents the company in the negotiations, and his statements are as material to the validity of the contract as are those of the insured.    Fraud and falsehood on either side, which induce the making of the contract, afford a ground of relief to the injured party, whether such party be insurer or insured.

In the case now before us, the parties to the contract are an insurance company without capital, a mere shell; and a woman desirous to make some provision for her only son.    The representative of the company persuades her, as she testifies, to take a policy upon her life on the mutual side of the company, by telling her that it was in good financial standing in the business world, and had a paid-up capital of fifty thousand dollars. This paid-up capital she was made to understand would in some way provide for the mortuary assessments to be made on the holders of policies on the mutual plan, so that after the payment of her premium and first year's dues, amounting together to thirty-nine dollars, she would have little or nothing to pay.    Neither the agent nor any one else contradicts her in the statement of the representations made to her, but she is sustained by her employer, who testifies that he heard the assurance of the agent made to her more than once, that the company was in good standing and had a paid-up capital of fifty thousand dollars.

Two questions are now raised by the plaintiff in error: First: Did the representations relied on relate to a material subject? Next, did the court err in not sending the case to the jury?

We agree with the learned judge of the court below that the solvency of the company proposing to insure was a consideration material to the insured, and that a misrepresentation upon that subject by the agent which induced the applicant to pay her money to a worthless company for a policy that did not insure, was a fraud which rendered the contract voidable by her. If Mrs. Weigle had understood that the company was without capital, without financial standing, and without ability to meet its contracts, she would not have paid her money for a policy in it; but her action was induced, as she states, by the representations made by the agent, and believed by her, in regard to the paid-up capital and financial standing of the company. The representations related to a material subject, and were a material part of the contract: Sunbury Fire Ins. Co. v. Humble, 100 Pa. 495.

But ought not this uncontradicted testimony to have been submitted to the jury? If this had been asked in the court below, it would have been proper to submit the question of credibility to the jury, but it does not appear to have been asked. If not asked there, it cannot be complained of here. The point submitted to the court by the plaintiff below, shows that the reliance of counsel rested on the question of the materiality of the representations set up, rather than on the credibility of the witnesses by whom they were proved. The point is as follows: "It appearing by the uncontradicted testimony in the case, that the representation which is set up as a bar to the recovery is immaterial, and in no wise affected the financial standing of the company at the time it was made, it was not such a misrepresentation as would amount to a fraud or prevent a recovery, and the court is requested to so instruct the jury as a matter of law." This is in effect a concession of the fact. The issue raised is over its materiality only. Granting the fact to be as alleged by the defendant below, the point asks a binding instruction that it is an immaterial one, and not such "as would amount to a fraud or prevent a recovery." It is now too late to complain that the facts should have gone to the jury for determination, when no such suggestion or request was made at the proper time or place. It would be unfair to the court and to the defendant to sustain this assignment of error upon this record.

Judgment affirmed.