STANDARD LUMBER CO. v. BUTLER ICE CO.

(Circuit Court of Appeals, Third Circuit. June 20, 1906.)

No. 45.

CONTRACTS—ILLEGALITY—ENFORCEMENT.

Defendant corporation, being about to construct an ice plant, procured a bid for the work from plaintiff, after which plaintiff's manager, with the knowledge of its directing and executive authorities, entered into a corrupt bargain with defendant's president to add more than 50 per cent. to the original bid, with the understanding that the amount by which the bid was thus increased should when paid by defendant company be divided between the conspirators. *Held* that, as such act constituted a crime, the illegality permeated the entire contract, and precluded the maintenance of any action on the contract either to recover the contract price or the amount originally bid.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 521–530, 701–712.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Wm. M. Hall, Jr., for plaintiff in error.

T. C. Campbell, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and McPHERSON, District Judge.

GRAY, Circuit Judge. In the court below, the plaintiff in error, the Standard Lumber Company, a corporation of the state of Pennsylvania, brought an action ex contractu against the defendant, the Butler Ice Company, a corporation of the state of Delaware. The statement of claim sets forth a certain contract in writing between plaintiff and defendant, whereby the plaintiff undertook to provide the materials and do all the work mentioned and shown in specifications and drawings, referred to in said contract, for the erection and completion of an ice plant, with certain exceptions therein stated; and in consideration thereof, the defendant agreed to pay plaintiff the sum of $10,808. It was also agreed that there should be paid $6.50 per perch for extra stonework, above that shown in said plans, and 50 cents per yard for extra excavating, subject to additions and deductions as in said contract provided. It is then alleged that plaintiff had provided all the materials, and had performed all the work stipulated for in said contract, in accordance with the terms thereof, and that defendant had accepted the same; that plaintiff had also done extra work under the contract, amounting to $2,838, so that the $10,808 agreed to be paid for the completion of the work specified in the contract, and the amount to be paid for the extra work, at the rate stipulated for therein, amounted to $13,646. Against this sum, the plaintiff allows defendants credits to the amount of $11,624, leaving a balance of $2,022 claimed as due from defendant to plaintiff.

The written contract, as set out in the statement of claim and produced at the trial, was executed by the plaintiff, the Standard Lumber Company, under its seal and the signature of J. M. Wetherill, manager. and on the part of the Butler Ice Company, under the seal of said company and the signatures of Peter F. McCool, its president, and S. B. Hermes, its secretary. The affidavit of defense set out, and it was proved at the trial, that the plaintiff company, by a letter addressed to P. F. McCool, then president of the defendant company, and signed by the Standard Lumber Company, "Per F. E. Brotherton," agent of the plaintiff company, duly authorized in that behalf, proposed to build the ice plant for defendant company, according to the plans and specifications submitted, for the sum of $6,309.50; that the plans and specifications referred to in said bid, were the plans and specifications referred to in, and made part of, the contract between plaintiff and defendant companies, upon which suit was brought in the court below, and in which the consideration named for the work included in this bid was $10,808, and that the bid for $6,309.50 was full price for said work. Subsequent to the making of said bid, by agreement between Peter F. McCool, president of the defendant company, and the plaintiff company, acting through its manager, Wetherill, the said bid for said work was

increased to the sum of $10,808, and the contract upon which suit was brought was then entered into upon that consideration to be paid by the defendant company, it being understood by the said officers of the two companies, that when the consideration was paid by the defendant company, $2,000 of the difference between the original bid and the contract price, was to be paid to the said Peter F. McCool, and that the balance was to be divided between the said Wetherill and the said plaintiff company. The testimony as to this corrupt understanding and contract was uncontradicted, and it was not denied that the consideration of the written contracts was thus corruptly increased, or that the president of the defendant company conspired with the plaintiff company and its manager, Wetherill, to defraud the said defendant company for his own benefit.

The facts thus summarized not being denied, counsel for plaintiff contends that the defendant is bound by the action of its president and secretary, and that, inasmuch as the corporate seal was attached, as well as the signatures of the last-named officers, defendant cannot now avoid the obligation of the contract thus formally executed, and that plaintiff had a right to rely upon the signed contract under the corporate seal. The cases relied upon by plaintiff seem to be those in which corporate obligations duly executed have come into the hands of innocent third persons, where it is held that, inasmuch as there is a presumption that the seal was affixed by the proper authority, it is not to be overcome by the mere fact that no vote of the directors authorizing it is shown. We are not, however, dealing with a case of the innocent holder of such a contract, the undisputed facts being that the manager of the plaintiff corporation, with the knowledge of its directing and executive authorities, entered into a corrupt bargain with the president of the defendant company, to add more than 50 per cent. to the original bid, with the understanding that the amount by which the bid was thus increased should, when paid by the defendant company, be divided between the conspirators. It is too mild a characterization of such a transaction to say that it was fraudulent. It was a gross scheme for the abstraction of more than $4,000 from the treasury of the defendant company, to be converted to the use of the conspirators, the larger share of it to the defendant's own president. The acts and conduct thus described are clearly in violation of two statutes of Pennsylvania, which provide as follows: Act of March 31, 1860:

"If any two or more persons shall falsely and maliciously conspire and agree to cheat and defraud any person or body corporate, of his or their moneys, goods, chattels or other property, or to do any other dishonest, malicious and unlawful act, to the prejudice of another, they shall be guilty of a misdemeanor, and on conviction, be sentenced to pay a fine, not exceeding five hundred dollars, and to undergo an imprisonment, by separate or solitary confinement at labor, or by simple imprisonment, not exceeding two years." P. L. 413, § 128.

### Act of June 12, 1878:

"Sec. 1. If any person, being an officer, director. superintendent, manager, receiver, employé, agent, attorney, broker, or member of any bank or other body corporate, or public company, municipal or quasi municipal corporation,

shall fraudulently take, convert, or apply to his own use, or the use of any other person, any of the money or other property of such bank, body corporate, or company, municipal or quasi municipal corporation or association, or belonging to any person or persons, corporation or association, and deposited therein, or in possession thereof, he shall be guilty of a misdemeanor."

"Sec. 5. That every person found guilty of a misdemeanor under any or either of the preceding sections of this title, wherein the nature and extent of the punishment is not specified, shall be sentenced to pay a fine not exceeding one thousand dollars, and to undergo an imprisonment by separate or solitary confinement at labor not exceeding six years." P. L. 196, 197.

The contract was not only immoral, but it was illegal and criminal, and therefore void. No court would be justified in enforcing the whole or any part of such a contract. From an origin so flagitious, no right of action can arise. The maxim "ex turpi causa, non oritur actio," founded as it is on sound morals, has been long recognized by courts in the practical administration of justice. Petrie v. Hannay, 3 T. R. 422; Collins v. Blantern, 2 Wils. 341. A contract otherwise void, as being founded upon an immoral consideration, cannot be rendered valid by the mere ceremony of attaching a seal thereto. Gaslight & Coke Co. v. Turner, 5 B. N. C. 675.

The defendant, however, contends that the contract, as to the payment of $10,808, which included the amount to be stolen from defendant, was executed, and that the balance sued for referred to the extra work under the stipulations of the contract, and had no relation to the fraudulent part thereof. The evidence will not permit a serious consideration of this contention. There was no appropriation of the payments made from time to time to any particular part of the contract, and plaintiff cannot now make that appropriation for his own benefit. The poison of the immoral consideration infects the contract as a whole, and the court below were right in refusing to lend its aid to the enforcement of any part thereof.

Nor is the principle invoked by the defendant, that no one may show his own turpitude, applicable here. The real defendant is the company. It was the victim, not a perpetrator of the fraud. Its president conspired with plaintiff to take from it a large sum of money, by falsehood and deception practiced through the medium of the contract here sued upon. But, even if the defendant could by any possibility have been shown to have been a party to is own spoliation, by the dishonest conduct of its president, it could still have alleged the illegal consideration as a defense. Where the contract on which the action is founded is contra bonos mores, or forbidden by express law, the defendant may plead its invalidity, even though he be a participator in the wrong. In such a case, the courts refuse to enforce the contract on grounds of public policy, and not as a matter of private interest.

In Holman v. Johnson, Cowp. 343, Lord Mansfield says:

"The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy. * * * No court will lend its aid to a man who founds his action upon an immoral or an illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appear to arise

ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff."

It is objected that in such cases, fraud is always a question for the jury, and that the court erred in giving binding instructions to find in favor of the defendant. We see no reason, and none has been shown where the facts constituting such a defense are undisputed, why the court may not, as in other cases, direct a verdict in accordance with such facts, if it would feel compelled, upon the rendition of a contrary verdict, to set the same aside. That this was such a case, we have no doubt. It must not, however, pass without notice, that each side requested the court to give peremptory instructions for a verdict in its favor, and the record discloses the fact that, after the testimony was closed on both sides, it was agreed by counsel for both the plaintiff and defendant, that the question was a question of law for the court, and the judge opened his charge to the jury with the statement:

"It is agreed on both sides that this is a question for the court to dispose of under the evidence; and therefore, it becomes my duty to direct the character of the verdict which you are to render."

As was said by the Supreme Court of Pennsylvania in a similar case:

"It would be unfair to the court and to the defendant to sustain an assignment of error, based upon the failure to submit the question to the jury." Life Ass'n v. Weigle, 128 Pa. 577, 18 Atl. 393.

The judgment of the court below is therefore affirmed.