## KEEHN v. BRADY TRANSFER & STORAGE CO.

### No. 3933.

District Court, N. D. Illinois, E. D.
Feb. 13, 1946.

Beckman, Healy, Reid & Hough, of Chicago, Ill., for plaintiff.

394

David Axelrod, of Chicago, Ill., and Bradshaw, Fowler, Proctor and Fairgrave, of Des Moines, Iowa, for defendant.

CAMPBELL, District Judge.

This is an action by the receiver of the Central Mutual Insurance Company, of Chicago, to collect the assessment ordered by the Circuit Court of Cook County, Illinois, against defendant, a policyholder in the insolvent insurance company.

## History of Case

The case originated in the Circuit Court of Cook County, Illinois, on December 13, 1941, from which it was removed to this court on petition of the defendant, an Iowa Corporation, on January 23, 1942. A pretrial conference was held on June 2, 1942. The case finally came to trial on May 12, 1944, and was dismissed for want of prosecution. On May 25, 1944, the order of May 12 was vacated and the case reinstated. Another pre-trial conference was held on September 11, 1944, when it was agreed that the court would determine the case on plaintiff's motion for summary judgment. Whereupon briefs were filed and the case submitted to the court on March 2, 1945.

## Statement of Case

Liquidation proceedings were instituted against the Central Mutual Insurance Company of Chicago on January 8, 1937, because of insolvency. On July 1, 1940, the Circuit Court of Cook County, Illinois, levied an assessment of 100% of the cash premiums expressed in the policies, against certain named individuals and corporations, including the defendant, who held policies issued by the company at any time from January 31, 1935, to January 11, 1937. Defendant was not a party to the assessment action. Defendant's policy was effective for a term of one year from September 15, 1935, but was cancelled by the insurance company on August 16, 1936. The policy covered personal injuries and property damage arising from the operation of defendant's trucking business. Defendant was assessed for the sum of $10,096.89, which figure was derived by adding to $9,280.73 (the amount of premiums paid by defendant during the eleven-month life of the policy), the sum of $816.16 for the period from August 16th to September 15th, 1936, following the cancellation of the policy. The latter figure is called the "average" premium and is based on amounts actually paid by defendant, which varied from month to month according to the volume of the defendant's business. Plaintiff asks judgment for the amount assessed, plus interest thereon from July 20, 1940, when demand was made on defendant by plaintiff's predecessor receiver.

## Defenses

The defendant resists payment of the assessment and asks that the complaint be dismissed on substantially the following grounds:

I. The policy issued to the defendant was void because the insurance company did not comply with Iowa statutes in these respects:

(a) Failure to maintain the surplus and unearned premium reserve required by Iowa Code 1939, Sec. 8955 and Sec. 8939.

(b) Failure to observe requirements as to the form of the policy, in not receiving an application for the insurance and attaching it to the policy. Iowa Code 1939, Sec. 8974.

(c) Failure to state the maximum premium to be paid for the insurance, and whether such maximum premium is a cash premium only, or includes an additional contingent premium. Iowa Code 1939, Sec. 8909.

(d) Failure to insert a provision in the policy releasing the insured from liability for losses after the cancellation of the policy. Iowa Code 1939, Sec. 8989.

(e) Filing false financial statements with the Iowa Insurance Commissioner, by reason of which falsification, the insurance company received authority to do business in Iowa. Iowa Code 1939, Sec. 8945.

II. Even if the policy is valid, under Iowa law it is nonassessable in form.

III. The notice on the back of the policy, stating the contingent liability of the assured and informing the assured that it is a member of the insurance company, is not a part of the insurance contract.

IV. Even if this notice is binding, judgment cannot be entered for the amount ordered by the Illinois court because the formula adopted by the court as a basis for the assessment is meaningless and, in one respect, violates the Iowa statute.

(a) No "cash premium" (of which the assessment is to be 100%) is expressed in the policy.

(b) In any event, the assessment cannot exceed the $1600 deposit premium named in the policy.

(c) Iowa statute releases an Iowa policy-holder from liability for losses after the policy cancellation, which was on August 16, 1936; yet the Illinois decree assesses policyholders for losses through January 11, 1937.

### Findings and Conclusions

### I. Validity of the Insurance Policy.

■ The only possibly effective attack on the validity of the policy arises out of the insurance company's filing allegedly false statements of its financial condition with the Iowa Insurance Commissioner. The other defenses based on statutory violations are not only insufficient to avoid the policy, but may no longer be valid since the holding of the United States Supreme Court in United States v. South-Eastern Underwriters' Association, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, that interstate insurance business is interstate commerce. The extent to which a state can now impose conditions on foreign insurance companies before admitting them to do business is therefore in doubt. It is, however, unnecessary to pass on the validity of these statutory conditions, except to say that the requirement of disclosure of financial condition, which is the basis of the defense of fraudulent misrepresenta-tion, is valid until Congress occupies the field by the passage of a federal insurance regulatory law, because it is non-discrim-inatory, being imposed on home and foreign insurance companies alike (Iowa Code 1939, Sec. 8945), and is not a burden on interstate commerce.

*Failure to maintain surplus:* The lack of a surplus, and an unearned premium re-serve, as required by Iowa Code 1939, Sec-tions 8955 and 8939, is related to the fact of the company's insolvency and alleged fraudulent misrepresentation to the Iowa Insurance Commissioner. These factors will be considered together in a subsequent portion of this opinion under the defense of fraud.

■ *Lack of application for policy:* It is difficult to understand how the defend-ant can maintain that Sec. 8974 of the Iowa Code requires that the insurance com-pany attach a copy of the application to the policy as a condition precedent to the validity of the policy. The language of the statute is clear that only applications which are made a part of the policy, or are re-ferred to therein, or affect the validity of the policy, must be attached thereto. Fur-thermore, Section 8975 provides that failure to attach the application shall not render the policy invalid, but that the company shall be precluded from pleading or prov-ing such application, or the falsity thereof, in any action on the policy.

■ *Statement of maximum premium:* The defendant's contention that the policy failed to state the maximum premium is re-lated to its third main defense that the "notice on the back of the policy," stating, the policyholder's contingent liability, is not a part of the policy and is not binding on him. Inasmuch as this court holds that this notice is a part of the policy, for the reasons given later in this opinion, it also holds that the maximum premium is clear-ly stated in the policy, and consists, first, of the earned premium, adjustable monthly on the basis of the volume of defendant's business, as set forth originally in En-dorsement No. 199 to the policy and later in subsequent endorsements, and second, of the contingent liability, limited to one times the premium provided for by the policy. Keehn v. Parrish Dray Line, 4 Cir., 1944, 145 F.2d 646.

■ *Failure to include release of policy-holder from liability for losses after can-cellation of policy:* Iowa Code 1939, Sec. 8989 provides that the Commissioner of Insurance shall refuse to authorize an in-surance company to do business or to re-new its permission to do business when the form of policy does not provide, among other things, for the release of the insured from liability for losses after the cancella-tion of the policy, if the insurance is in a mutual company. By the very terms of the statute, therefore, failure to include such a provision in the policy is merely a ground for refusing to allow the company to do business in Iowa. There is no indication that the proper sanction is the invalidation of the policy, and this court refuses so to hold. The result sought by the statute through inclusion of this release provision in the policy is attainable also through general rules of law covering the liability of mutual policyholders to assessments arising out of the insolvency of the com-pany. Protection of the defendant's rights in this respect can therefore be attained without going beyond the statute and in-validating the policy. This aspect of the case will be further discussed in the final section of this opinion.

*Filing false financial statements with the Iowa Insurance Commissioner.* The defense based on the company's alleged fraudulent misrepresentation of its financial condition to the Iowa Insurance Commissioner, and the related defense based on the company's failure to remain solvent and to maintain the surplus and unearned premium reserve required by Iowa law, will be considered together.

Since the company qualified, even though fraudulently, to do business in Iowa, all cases involving companies which did not qualify to do business in a state, whose courts were thereby closed to such companies in the enforcement of insurance contracts, may be laid to one side. A few cases, however, hold squarely that even though an insurance company has formally qualified to do business in a state, its pre-existing insolvency may be asserted by a policyholder to resist assessment liability. In Swing v. Red River Lumber Co., 1908, 105 Minn. 336, 117 N.W. 442, the court held that a certificate to do business in the state is only prima facie evidence of the right to do business and can be rebutted by a showing that the company in fact lacked the financial resources required by law to qualify in the state, and that this defense against assessment is not precluded by the decree of the receivership court ordering an assessment in a proceeding to which the policyholder was not a party. Furthermore, it was held in a recent case, arising out of the same receivership as the case at bar, that although the insurance company qualified to do business in the state under a statute requiring solvency as a condition of such qualification, its insolvency at the time it issued a particular policy may be asserted by the policyholder to resist assessment liability, since its insolvency was a violation of the statutory condition and made its operation in the state illegal. Keehn v. Hodge Drive-It-Yourself, Inc., Ohio App. 1943, 53 N.E.2d 69.

■ This court disagrees with the view that an insurance company's insolvency automatically deprives it of the permission to do business in a foreign state, prior to action by proper authority revoking such permission for failure to meet and maintain statutory requirements (including solvency). Justice and sound public policy require that no distinction should be made between policyholders in the company's home state and those in states where the company is doing business with the permission of the proper authorities. Since a company does not "qualify to do business" in its home state (in the technical meaning of that phrase), the concept of the automatic revocation of the right to do business, because of insolvency, would not be available to policyholders in the company's home state, where the company is regarded as legally operating until placed in receivership or otherwise liquidated. It is clear, however, that all who become policyholders, regardless of their place of residence, after the company's officials are aware of its insolvency are equally damaged and should have the same remedy. The real issue in the case, therefore, is the alleged fraud of the company's officials in concealing the company's insolvency and continuing to do business.

■■ The chief difficulty with the defense of fraud is that the representation of solvency was made by the insurance company to a state official, not to the defendant, and that traditionally this lack of privity has defeated third parties. Hunnewell v. Duxbury, 1891, 154 Mass. 286, 28 N.E. 267, 13 L.R.A. 733; Fogg v. Pew, 1858, 76 Mass. 409, 71 Am.Dec. 662. Of course, where the false statements concerning an insurance company's financial condition have been made by an agent of the company directly to a prospective policyholder, the latter can avoid the policy (New Era Life Ass'n v. Weigle, 1889, 128 Pa. 577, 18 A. 393), and can resist collection of an assessment. Sunbury Fire Insurance Co. v. Humble, 1882, 100 Pa. 495. In Hindman v. First National Bank of Louisville, 6 Cir., 1902, 112 F. 931, 57 L.R.A. 108, an action in fraud and deceit against a bank for statements concerning the financial condition of an insurance company in which plaintiff bought stock, the court thus stated the doctrine of privity in these cases, 112 F. at page 941:

"If the statement was addressed to, and intended only to influence the action of, the state insurance commissioner in respect to the licensing of the insurance company, he cannot sustain a recovery, even though he and others may have been led into the purchase of the shares of the insurance company as a consequence of the action of the insurance commissioner in admitting the company to do business upon the representation of the bank's certificate. * * * The plaintiff does not sufficiently connect himself with the misrepresentations by the bare fact that he bought stock in a company

which was improperly admitted to do business upon representations addressed to the state commissioner. The injury in such case is too remote."

It should be noted that the defendant in the case at bar is not in the position of one suing promptly to rescind the insurance contract upon discovering the insolvency of the company. The defendant has had the benefit of insurance protection for eleven months, and in that time the company has investigated and settled a number of claims against defendant; and it has had this protection at lower rates because the policy was issued by a mutual company. A liability of mutual insurance, balancing the benefit of lower rates, is the contingency that a policyholder may be required to contribute ratably under the assessment provision if the company becomes insolvent. This is so because of the nature of mutual insurance; a policyholder is both an insured, and, as to other policyholders, an insurer.

When a policyholder does not move promptly to disaffirm the policy, and third parties, without knowledge of the company's insolvency, subsequently become policyholders and have unpaid claims under their policies, their right to have him contribute an assessment to alleviate their losses is superior to his right to assert any fraud practiced by the company on him. Sherman v. Frasier, 1900, 112 Iowa 236, 83 N. W. 886; Dwinnell v. Felt, 1903, 90 Minn. 9, 95 N.W. 579; Dettra v. Kestner, 1892, 147 Pa. 566, 23 A. 889; Van Dyke v. Baker, 1906, 214 Pa. 168, 63 A. 594; Mansfield & Hahn v. Woods, Jenks & Co., 1893, 11 Ohio Dec.Reprint 761.

The close analogy furnished by the stock subscription cases is consistent with the view taken here. In most states, a subscriber to the stock of a corporation cannot rescind as against later creditors of the corporation. In some states, the power to rescind is dependent on whether there is "any considerable amount" of indebtedness incurred after the subscription. 4 Fletcher, Private Corporations Sec. 1710, 1713 (1931).

Therefore, because of the number and variety of reasons for denying the defendant's attack on the validity of the policy for fraud—the lack of privity, the failure to disaffirm promptly, the benefits enjoyed by defendant during the life of the policy, and the possible intervening equities of later policyholders—the defendant's attempt to resist liability on the first ground must be denied.

II. Assessability of Policy under Iowa Law.

As one ground for urging that the policy is non-assessable under Iowa law, the defendant asserts that the "notice on the back of the policy" is not part of the policy, and hence that the contingent liability provision therein is not binding. Consequently, concludes the defendant's argument on this point, since the policy contained only cash premium provisions, it is a non-assessable policy under Iowa Code 1939, Sec. 8909. For the reasons given later in this opinion, however, this court regards the notice as a part of the policy, which thereby clearly provided for an assessment liability.

As a second ground for urging the non-assessability of the policy under Iowa law, the defendant contends that the "contingent premium" must be expressed in both the application for the insurance and the policy itself, under Iowa Code 1939, Sec. 8909, which provides that the maximum premium "shall be expressed in the policy and in the application for the insurance." There was no application in the instant case. It is not clear that the import of this statutory provision is to make an application a condition precedent for a valid insurance policy. The defendant cites no cases so interpreting the statute. Even if the defendant's interpretation is correct, however, it should not now be allowed to plead the lack of an application and so invalidate the policy, because it held the policy until canceled by the insurance company, and allowed the company to adjust or investigate a number of claims arising thereunder.

III. Effect of the "Notice on the back of the Policy."

The so-called "notice on the back of the policy" is asserted by the defendant to be no part of the policy. From this premise the defendant argues that the maximum premium was not expressed in the policy, nor was it clearly stated whether the premium to be paid was a cash premium only, or a cash premium and an additional contingent premium; and that since the contingent liability provision was not binding, the policy is not assessable. As indicated above, these aspects of the case are determined adversely to the defendant by a

holding that the notice in question is a part of the policy and binding on the parties.

■ An examination of the policy reveals that the notice appears on the last page of the policy, in a series of general conditions, above the signatures of insurance company officers which are affixed at the end of the policy. It is therefore clearly a part of the policy, and makes the policyholder a member of the company subject to a contingent liability. Keehn v. Parrish Dray Line, 4 Cir., 1944, 145 F.2d 646. The policy is thus essentially different from the one in Pink v. Georgia Stages, Inc., D.C.Ga.1940, 35 F.Supp. 437, where it was held that a notice on the back of the policy, unsigned by any company officer and not referred to in the policy proper, did not bind the policyholder as a member of the company nor subject him to contingent liability.

IV. Collateral Attack on Assessment Order.

■ The defendant's last defense, that judgment should not be entered here for the amount ordered by the Illinois court, for the reasons given, amounts to a collateral attack on the assessment order. The general rule is that when a court having jurisdiction of an insolvent corporation determines the necessity for and amount of an assessment, all members of the corporation are thereby concluded, although those not parties to the assessment action may raise personal defenses (such as non-membership, fraud, etc.) in later actions to collect the sums assessed. Miller v. Barnwell Bros., 4 Cir., 1943, 137 F. 2d 257. In the latter case, it was held that a federal district court could not substitute its judgment allowing 48.31% of the premium paid, instead of 100% as assessed by the Illinois Court, because to do so would not be to give full faith and credit to the judgment of the Illinois Court. The district court had attempted to limit recovery to the extent to which the insurance company was insolvent.

■ Although the defendant is denied the right to attack the assessment order of the Illinois Court, no injustice is being committed here on procedural grounds. Defendant's contention that no "cash premium" was expressed in the policy (of which the assessment is to be 100%), other than the "deposit premium" of $1600, is without merit. It should be clear that what was intended as the basis for the assessment was 100% of the cash premiums provided for by the policy. Endorsement No. 199, which was made a part of the policy by reference, contained both the $1600 "deposit premium" and a formula for determining the "earned premium," payable monthly, based on the volume of defendant's trucking business for each month. The defendant thus contracted for cash premiums adjustable monthly, and cannot now object that the policy contains nothing more precise than a formula. Since the defendant's cash premiums paid under the formula are a matter of record, there is nothing vague or uncertain about the extent of its liability for assessment.

■ The defendant should not, however, be required to pay a so-called "average premium" amounting to $816.16 for the period following the cancellation of the policy by the insurance company. This rule has already been applied by at least two state courts in cases arising out of the same receivership. Keehn v. Hi-Grade Coal & Fuel Co., 1945, 41 A.2d 525, 23 N. J.Misc. 102, and Keehn v. Hodge Drive-It-Yourself, Inc., Ohio App. 1943, 53 N.E. 2d 69. In striking the sum of $816.16 from the amount sued for by plaintiff, this court is not violating the rule of Miller v. Barnwell Bros., 4 Cir., 1943, 137 F.2d 257, since it is allowing recovery of 100% of the premiums paid by the defendant during the life of the policy, and is merely correcting an error of computation appearing on the face of the record.

■ Furthermore, although the policy did not contain a provision releasing the policyholder from liability for losses occurring after the cancellation of the policy, the defendant is not liable for such losses, because a mutual policyholder is bound to contribute an assessment to redeem only those losses occurring during his membership in the company. Mansfield & Hahn v. Cincinnati Ice Company, 1892, 11 Ohio Dec.Reprint 617. Likewise, the policyholder is not bound to contribute to any losses arising prior to his membership in the company, or to redeem an insolvency theretofore existing. If the rule were otherwise, an insolvent insurance company could spread its losses thinner by selling additional policies with assessment provisions, and holding each new policyholder to an assessment liability by reference to the later purchase of a policy by another

policyholder, under the rule, previously discussed, that the equities in favor of later innocent policyholders are greater than those in favor of earlier, equally defrauded policyholders.

This court, however, is not the proper forum to control the application of the defendant's assessment. Only the Illinois Court having jurisdiction of the receivership can determine the claims to which the defendant's assessment can be applied. The defendant should apply to that court to ascertain that the use of its assessment is so limited, and that any part, or the whole thereof, not needed for claims arising during the life of defendant's policy, is returned to the defendant. In Selig v. Hamilton, 1914, 234 U.S. 652, at pages 665, 666, 34 S.Ct. 926, at page 931, 58 L. Ed. 1518, Ann.Cas.1917A, 104, a stockholder's assessment case, the Supreme Court declared:

"It is not to be assumed that these moneys will be applied to any indebtedness as to which the stockholders contributing respectively are not liable. We cannot doubt that the plaintiff in error, if he so desires, will have suitable opportunity to be heard as to the application of the amount which he may pay to the receiver, that it will be used only in the discharge of his obligation, and that any surplus to which he may be entitled will be duly returned. * * *

"We cannot regard it as essential to the exercise of the jurisdiction of the Minnesota court that it should be required, in order not to forego recovery from stockholders who had transferred their stock, to make a separate and distinct assessment against all the then stockholders at the date of every transfer appearing upon the books. * * * That assessment was leviable upon every share and against all persons liable as stockholders. If the plaintiff in error was among this number, he was not entitled to resist the recovery by reason of the nature or amount of the assessment, which was levied in conformity with the statute, but he was properly remitted to the Minnesota court for the adjustment of such equities as he might have."

The plaintiff is granted judgment for the sum of $9,280.73 ($10,096.89 assessed by the Illinois Court, less the $816.16 herein held to have been erroneously computed therein), with interest thereon from July 20, 1940.