S. H. SEAMANS, Receiver, v. CHRISTIAN BROTHERS MILL COMPANY.[1]

November 11, 1896.

Nos. 10,076—(27).

Insurance Company—Authority to Do Business—Statutory Requirements—Effect of Noncompliance.

An insurance company which has not complied with the statutory requirements, so as to be authorized to do business in this state, cannot recover premiums on a contract made by it, insuring property in this state, whether such contract was made within or without the state; and it makes no difference whether such company is a foreign corporation, or merely a foreign mutual unincorporated association. Ganser v. Fireman's Fund Ins. Co.,

[1] Reported in 68 N. W. 1065.

34 Minn. 372, holding that in such a case the insured may recover the loss, distinguished on the ground that the very object of said statutory requirements is the protection of the insured, and the parties are not in pari delicto.

Appeal by plaintiff from a judgment of the district court for Hennepin county, in favor of defendant, entered in pursuance of the findings and order of Smith, J. Affirmed.

*C. C. Joselyn* and *Geo. E. Sutherland*, for appellant.

*Warner, Richardson & Lawrence*, for respondent.

CANTY, J. The Wisconsin Mutual Fire Insurance Company is, as its name indicates, a corporation organized under the laws of the state of Wisconsin to carry on a mutual fire insurance business. It became insolvent, and plaintiff was appointed receiver for it by the courts of that state. Defendant, a corporation organized under the laws of this state and doing business therein, procured from said insurance company a policy of insurance on its property situated in Minneapolis, in this state. This suit is brought to recover a balance of unpaid premium claimed to be due on the policy. One of the defenses alleged by defendant, and sustained by the court, is that said insurance company never complied in any respect with the statutes of this state. Judgment was ordered for defendant, and from the judgment entered accordingly, plaintiff appeals.

The contract of insurance was made by correspondence between the two corporations. The trial court found as a fact that this contract was made in this state. Appellant assails this finding as not supported by the evidence, but, from the view we take of it, the point is not material; as we are of the opinion that even if the contract was made in Wisconsin, as contended by appellant, we would still refuse to enforce it, as being contrary to the policy of our laws, and an attempt to evade those laws. Among the statutory provisions material here are the following sections of G. S. 1894:

"Sec. 3157. It is unlawful for insurers or their agents to make, negotiate or solicit within this state any contract of insurance except as authorized in this act. * * *"

"Sec. 3161. The insurance commissioner, however, may issue to an agent who is regularly commissioned to represent one or more fire or fire and marine insurance companies, authorized to do business in this state, a certificate of authority to place excess lines of insurance in

companies not admitted to do business in the state: provided, however, that the party desiring such excess of insurance shall first file an affidavit with the insurance commissioner, stating that he has exhausted all the insurance obtainable from authorized companies."

Section 3167 provides that on complying with certain conditions the insurance commissioner may issue a license or certificate to foreign companies, authorizing them to transact business in this state; and section 3199 provides that no foreign mutual fire insurance company shall do business in this state unless it has an actual cash surplus of $200,000 over all liabilities, which the court found this insurance company did not have. Many other restrictions on such companies may be found in the sections immediately preceding and those following the ones above mentioned.

These statutory provisions are police regulations intended to protect people and property in this state against spurious and irresponsible insurance companies. It is plainly the intent of these statutory provisions to compel all such insurers doing business in, or taking risks on property in, this state to comply with our local laws and submit to our local courts. Neither can there be any doubt about the authority of the legislature to pass such laws. Paul v. Virginia, 8 Wall. 168; Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207. It is a general rule that a contract made in one state will be enforced in another state, though contrary to the laws or public policy of the latter state. 3 Am. & Eng. Enc. Law, 543. This rule is more especially applicable when no particular place of performance is contemplated by the contract, but the place of performance may be anywhere. It is also a general rule that where a contract is entered into in one state, to be performed in a certain other state, the validity of the contract will be determined by the law of the latter state. Id. 542, 544; Wharton, Confl. Laws, §§ 398 et seq., 486. We will not attempt to discuss the many and complex distinctions that have arisen where these two rules came in conflict. Usually, in such a case of conflict of laws, it is little more than a question of determining the intention of the parties to the contract,—whether they intended to be governed by the one law or the other. But cases arise where the parties are not thus at liberty to select which law they choose. See Wharton, Confl. Laws, §§ 490–494.

The laws or public policy of a state may prohibit the making of a

certain contract, but it does not follow that if the contract is made elsewhere such state may not, within its borders, enforce the same by extending to it the comity which exists between states. But, again, the laws and public policy of the state may be such as to completely stamp out this comity, and prohibit within the jurisdiction of the state the enforcement of the contract. Especially is this so if, though the contract was made elsewhere, it was to be performed within the state. There are many cases extending this doctrine of comity to contracts of insurance made elsewhere, and insuring property in the state in which the contract was enforced. See Wharton, Confl. Laws, §§ 465–467. But, as before stated, it depends on the laws and public policy of such state whether or not it will thus enforce the contract. The laws and public policy may be such as to destroy this comity and prohibit such enforcement of the contract.

We are of the opinion that the laws and public policy of this state in reference to the insuring of property are of this character. The restrictions in our statutes are so many, and the repressive character of the legislation such, that we must hold this to be the public policy of this state. This seems also to be the character of the insurance legislation in Iowa and Michigan, as appears by the cases of Seamans v. Zimmerman, 91 Iowa, 363, 59 N. W. 290, and Seamans v. Temple Co., 105 Mich. 400, 63 N. W. 408, where this same receiver was defeated in attempts to collect unpaid premiums from citizens of those states. Neither does it make any difference that the insurer is a mutual company or that it is, as appellant claims, unincorporated. Neither is this decision in conflict with Ganser v. Fireman's Fund Ins. Co., 34 Minn. 372, 25 N. W. 943, where it was held that the insured can recover the loss even though the insurer has not complied with the statutory requirements so as to be authorized to do business in this state. The very object of these statutory provisions is the protection of the insured, and the parties are not in pari delicto. This disposes of the case, and renders it unnecessary to consider the other questions raised.

Judgment affirmed.