# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

JAMES B. SWING v. JOHN A. HUMBIRD and Another.[1]

December 23, 1904.

Nos. 14,069—(113).

**Mutual Insurance—Assessment by Order of Court.**

Action to recover upon an assessment of the policy holders of an insolvent mutual insurance company, made by a court having jurisdiction to wind up its affairs. *Held*:

1. Such assessment is not conclusive upon any policy holder as to the question whether his relation to the company was such as to subject him to liability for an assessment. The judgment making the assessment is, however, conclusive as to matters relating to the necessity for, and the amount of, the assessment.

2. The evidence sustains the findings and decision of the trial court.

Appeal by plaintiff from an order of the district court for Ramsey county, Kelly, J., denying a motion for a new trial. Affirmed.

*William W. Fry* and *Patterson A. Reece*, for appellant.

*Stiles W. Burr*, for respondents.

START, C. J.

This is an action by the trustee of the Union Mutual Fire Insurance Company of Cincinnati, Ohio, hereafter referred to as the company, to

[1] Reported in 101 N. W. 938.

94 M.—1

recover from the defendants the sum of $332.06, alleged to be due from the defendants for an assessment upon certain insurance policies issued by the company to them. The answer put in issue the allegations of the complaint as to the assessment, and alleged, in effect, that under their policy contract with the company they were not liable to assessment to pay its losses. The cause was tried by the court without a jury, and findings of fact favorable to the contention of the defendants made, and, as a conclusion of law, judgment directed for the defendants, dismissing the action on its merits. The plaintiff appealed from an order denying his motion for a new trial.

The facts found by the trial court are, so far as here material, substantially these:

The company was incorporated May 27, 1887, under the laws of the state of Ohio, as a mutual fire insurance company. Immediately after such incorporation the company adopted by-laws, a true copy of which is annexed to and made a part of the defendants' answer, which by-laws have never been changed. The company at the time of its organization was authorized by the statutes of the state of Ohio and its by-laws to issue two classes of policies, both mutual in character—one on the premium note plan, and the other on the cash deposit plan, which provided for a "short term participating policy." The first class of policies were to be issued for the full term of five years upon the insured giving a premium or deposit note in such amount as required by the board of directors, and paying one-fifth thereof in cash in advance; that is, the insured paid one-fifth of the premiums for five years in cash, and gave a deposit or premium note for the other four-fifths. All premium notes were subject to assessment for the losses and expenses of the company. The second class of policies were authorized to be issued for a less term than five years. The policy holder in this second class was not permitted to give a note for any part of the premium, but was required to deposit in cash the full premium for the full term for which his policy was issued. The by-laws of the company (article 11, sections 3 and 4) expressly provided that:

> Sec. 3. All policies for less than five years shall be issued upon the receipt by the company, in cash, of the premium for the term insured. Such policies shall be charged with their due

proportion of all losses and expenses as shall accrue during the time they continue in force. At the expiration of the terms for which such policies are issued, or at their earlier cancellation by the assured, the policy holders shall be entitled to and shall receive a cash dividend of one-half the amount which shall remain unused of the premiums originally paid by them, the remaining half being deposited in the guarantee or reserve fund of the company.

Sec. 4. No member shall be liable for losses or expenses or for any indebtedness of the company in any amount except to the extent of the premium notes given by him.

The statutes of Ohio relating to mutual fire insurance companies were amended by an act approved April 14, 1888, to take effect July 1, 1888 (Laws 1888, p. 273). This amended statute contained, with others not here material, the following provisions:

Nor shall any company on the plan of mutual fire insurance be incorporated until not less than * * * have been subscribed and the premium thereon, for one year, paid in cash * * * each subscriber agreeing, in writing, to assume a liability to be named in the policy subject to call by the board of directors, in a sum not less than three nor more than five annual premiums. And the same liability shall also be agreed to in writing by each subsequent subscriber or applicant for insurance, who is not a merchant or manufacturer. * * * Any such company must in its by-laws, and must in its policies, fix by a uniform rule the contingent mutual liability of its members for the payment of losses and expenses; and such contingent liabilities shall not be less than three nor more than five annual cash premiums as written in the policy.

Every person who effects insurance in a mutual company, and continues to be insured, and his heirs, executors, administrators, and assigns shall thereby become members of the company during the period of insurance, shall be bound to pay for losses and such necessary expenses as accrue in and to the company in proportion to the original amount of his deposit note or contingent liability.

This act shall not affect companies now doing business on the premium note plan unless they elect to dispense with said notes and embody the contingent liability in the policy as herein provided; and said original sections  *  *  *  are hereby repealed. Provided that said sections shall remain in force as to all mutual companies now doing business which do not elect to reorganize under the said sections as amended by this act.

The company never reorganized, or attempted so to do, under the statute as amended. But after it was so amended, and in September, 1889, the company issued to the defendants two policies of insurance, whereby it insured them against loss by fire of lumber owned by them for one year from October 1, 1889, in the sum of $1,500 and $5,000 respectively. Each of the policies was of the class known as "short term participating policies," as provided by the by-laws of the company. The defendants paid to and deposited with the company $100 for the larger policy, and $30 for the lesser one, in accordance with the by-laws and regulations of the company as recited in the policies. The amount so paid and deposited for each policy was the full amount of premium for one year at the maximum rate demandable or receivable by the company for a policy of insurance of that amount on property of the character and situation of that insured by each policy. The defendants did not give any premium or deposit note, or agree in writing to assume any liability, nor were they required so to do. No reference was made in the policies to any liability, contingent or otherwise, on the property of the defendants, in addition to the cash deposit. On December 1, 1889, the property described in the policies was destroyed by fire, and in March, 1890, the company paid to the defendants the sum of $6,500 in full settlement and satisfaction of its liability under the policies, which were surrendered to the company and canceled by it. The company became insolvent, and on December 18, 1890, it was, in proceedings in the supreme court of the state of Ohio, so adjudged, and dissolved, and the plaintiff appointed the trustee for its creditors and policy holders. He is now acting as such trustee. Some eleven years thereafter, and on June 11, 1901, the supreme court of Ohio made and entered its ex parte (as to the defendants) judgment or decree of assessment, as alleged in the complaint herein.

The plaintiff's assignments of error present two general questions for our consideration:

First. Is the judgment making the assessment conclusive upon the defendants as to their liability to assessment for the losses of the company?

Second. Are the findings and decision of the trial court sustained by the evidence?

1. The plaintiff contends, in effect, that the ex parte decree in question is conclusive upon the defendants upon the question of their liability to assessment for the losses of the company, and that they are barred from urging the defense pleaded in this case. The question of the conclusiveness of an assessment upon stockholders and members of a corporation for the payment of its liabilities made by a court having jurisdiction to wind up its affairs is too well settled in this state to justify any extended discussion of it. Where a court has such jurisdiction of a corporation, its order or decree making an assessment upon its stockholders or members without personal notice to them is conclusive as to all matters relating to the necessity for making the assessment, and the amount thereof. But it does not conclude any stockholder or member as to the question whether his relation to the corporation was such as to subject him to liability for an assessment, or as to any other defense personal to himself. Langworthy v. Garding, 74 Minn. 325, 77 N. W. 207; Langworthy v. C. C. Washburn Flouring Mills Co., 77 Minn. 256, 79 N. W. 974; Straw & Ellsworth Mnfg. Co. v. L. D. Kilbourne Boot & Shoe Co., 80 Minn. 125, 83 N. W. 36; Dwinnell v. Kramer, 87 Minn. 392, 92 N. W. 227. The assessment in the case last cited was made by one of the courts of our own state, yet effect was given to the claim of the defendant that by virtue of his policy contract he was not liable to assessment.

Now, the defense made by the defendants in this case is not, as plaintiff seems to assume, that the company had not observed the provisions of the statute governing it, and therefore the defendants were not members of the company. But the defense is that by the terms of their contract with the company they were not liable for any assessment, or, in other words, that their policies were of the class which imposed no liability upon the holders thereof beyond the amount of the cash deposit required.

It is clear that this contention is correct if the company did not, before the defendants' policies were issued, reorganize under the provisions of the amended statute. It may be conceded that the original statute did not in direct terms authorize the two classes of policies provided for in the by-laws of the company. The by-laws, however, are not inconsistent with the statute, for in the case of policies of the second class a deposit in cash for the entire premium for the full term was made, instead of a premium note for four-fifths of the premium. In accordance with section 3 of the by-laws we have quoted, the due proportion of such policies for all losses and expenses of the company during the time they are in force is to be charged against this cash deposit, and, if there is a surplus of the deposit left, policy holders are to receive back one-half thereof as a dividend. This by-law does not impose any liability on such policy holders beyond the amount of the cash deposit. It was obviously intended to provide for a participation in the profits, if any there should be, by the policy holders of the second class, who deposited cash in lieu of premium notes. It would be manifestly unjust to assess or impose a contingent liability on such policy holders, when those who gave a premium note were not liable, except to the amount of the note; hence section 4 of the by-laws was adopted, which provides that no member shall be liable in any amount, except to the extent of the premium note given by him.

The defendants made the cash deposit but gave no premium note, as none was or could be required. It follows, upon the hypothesis stated, that they are not liable to assessment for the losses, for they paid and deposited in advance their full contribution therefor. In re Minneapolis Mut. Fire Ins. Co., 49 Minn. 291, 51 N. W. 921; Swing v. H. C. Akeley Lumber Co., 62 Minn. 169, 64 N. W. 97; Given v. Rettew, 162 Pa. St. 638, 29 Atl. 703. It also follows that their defense is not foreclosed by the judgment making the assessment. Great Western Telegraph Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810.

2. This brings us to the question whether the findings and decision of the trial court are sustained by the evidence. The most material finding of fact which is challenged is to the effect that the company never reorganized under the amended statute. The plaintiff claims that it conclusively appears, from the evidence that the by-laws were

adopted after the amended statute went into effect, and on July 31, 1888, and further that this fact makes it plain that the company did reorganize before the policies were issued in this case. The reply substantially admits the allegations of the answer that the by-laws were adopted immediately after the incorporation of the company, and have never been changed.

But if it be conceded that the by-laws were adopted at the time claimed by the plaintiff, the fact is immaterial in this case, for such fact has no tendency to show any reorganization of the company. On the other hand, the by-laws show upon their face that they were not adopted with reference to a reorganization of the company, for they are radically inconsistent with the requirements of the amended statute. The statute as amended requires that each applicant for insurance, other than a merchant or manufacturer, should agree in writing to assume a liability to be named in the policy, in a sum not less than three nor more than five annual premiums, and, further, that the company must, in its by-laws and policies, fix by a uniform rule the contingent mutual liability of its members at not less than three nor more than five annual cash premiums, as written in the policy. Neither the by-laws nor the policies in this case comply with any of these provisions. The by-laws are only consistent with the purpose of the company not to reorganize under the amended statute, and, in connection with the policies issued after they were adopted, they tend strongly to show that there was no reorganization of the company. The evidence is sufficient to sustain the finding.

This makes it unnecessary to decide whether the defendants would, in view of the terms of their policies, have been liable to assessment in case the company had in fact reorganized. See Dwinnell v. Kramer, 87 Minn. 392, 92 N. W. 227.

We have considered the other assignments of error, and have reached the conclusion that all the findings of the trial court which are essential to its decision are sustained by the evidence. The defendants are not estopped to assert their defense in this case by the fact that they met with a loss, and were paid the full face of their policies by the company. In making such payment the company simply discharged its contract obligations.

Order affirmed.