JAMES B. SWING v. RED RIVER LUMBER COMPANY.[1]

August 7, 1908.

Nos. 15,726—(228).

**Mutual Fire Insurance Company—Assessment Against Policy Holder.**
    Action to recover upon an assessment of the policy holders of an in-
solvent mutual fire insurance company, made by the ex parte decree
of a court having jurisdiction to wind up its affairs. The trial court
found that the company was organized under the act of its incorpora-
tion, and not under an amendatory statute imposing a contingent lia-
bility upon policy holders for company losses, and that the company
was not authorized to do business in this state. As a conclusion of law
therefrom, the court found that the plaintiff was not entitled to re-
cover. *Held,* such findings of fact are sustained by the evidence, and
they justify the conclusion of law.

**Decree of Foreign Court.**
    The decree is conclusive as to the necessity for and the amount of the
assessment, but it is not conclusive as to the question whether the con-
tract relations of an alleged member to the company were such as to
subject him to liability for an assessment, and, further, that it did not
deprive a member of any defense going to show that he was not liable
to be assessed for the losses of the company.

Action in the district court for Hennepin county by the trustee
for the creditors of an insolvent mutual fire insurance company to
recover $919.03 upon an assessment of the policy holders of the com-
pany. The case was tried before Holt, J., who found in favor of
defendant. A motion for a new trial was denied. From a judg-
ment entered upon the findings, plaintiff appealed. Affirmed.

*Tryon & Booth* and *Patterson A. Reece,* for appellant.

*Van Derlip & Lum,* for respondent.

START, C. J.

This is an appeal by the plaintiff from a judgment of the district
court of the county of Hennepin.

It is also the second appeal herein. Swing v. Red River Lumber
Co., 101 Minn. 428, 112 N. W. 393. The first appeal was by the de-

[1] Reported in 117 N. W. 442.

fendant from an order overruling its general demurrer to the complaint, and reference is here made to the opinion in the case cited for a fuller statement of the allegations of the complaint than here given. The action was brought by the plaintiff, as trustee of an insolvent mutual fire insurance company, to recover the amount of an alleged assessment, purporting to have been made by the ex parte decree of the supreme court of Ohio, against the defendant for the payment of the liabilities of the company. The principal point considered and decided by this court on the former appeal was whether the complaint alleged a cause of action against the defendant by virtue of the statute of Ohio which went into effect July 1, 1888. The court reached the conclusion that the complaint alleged a cause of action, and affirmed the order, and in so doing it held that:

"It is quite obvious from these allegations of the complaint that it was the intention of the plaintiff to allege a cause of action against the defendant by virtue of the Ohio statute. It is equally clear that, if the complaint does not allege facts sufficient to show a statutory obligation of the defendant as a member of the company for the payment of its losses, the complaint fails to state a cause of action. * * * If, as seems probable, from the provisions of the Ohio statute to which reference was made in Swing v. Humbird, 94 Minn., 101 N. W. 938, there are other provisions of the statutes of Ohio, which will show that those alleged in the complaint are not applicable to this company unless it reorganized, they can be pleaded in the answer. * * * if in fact such statutory provisions set out in the complaint, by reason of other provisions not pleaded, have no application to this company, unless it elected to and did reorganize under the amended statute, the defendant has the right to allege, and prove, if denied, such omitted statutory provisions, and then the burden will be upon the plaintiff to show that the company did so reorganize."

When the case reached the district court, the defendant answered, and set up such other provisions of the statutes of Ohio, and alleged, in effect, that the company was organized on May 27, 1887, under the statutes of Ohio then in force, and did business both on the premium note and cash plans, as provided by such statutes; that it never elected to dispense with such plans, or to embody in its policy the

contingent liability provided for by the amendatory act of April 14, 1888, which went into effect July 1, 1888, or to reorganize under such act at any time or in any manner; and, further, that it never altered its by-laws or policy, nor did it in any way bring itself within the scope and application of such act. The answer also alleged that: "Neither at the time of the issuance of any policy issued to or accepted by the defendant, nor at any time, did said Union Company comply with the requirements of the laws of the state of Minnesota to permit or authorize it to do business in said state as an insurance company, nor was it ever authorized so to do business."

These allegations of the answer were put in issue by the reply, but the trial court found as a fact that they were true; or, in other words it found as a fact (a) that the insurance company was organized under the statute of Ohio in force prior to July 1, 1888, and never reorganized; (b) that the company was never authorized to do business in the state of Minnesota. The plaintiff assigns as error that neither of the findings of fact is sustained by the evidence.

The plaintiff's claim as to the first finding is, in effect, an admission that the company was never reorganized, as provided by the act of 1888, with an unqualified assertion that it was organized under the act of 1888; hence there was no occasion to reorganize. In view of the claim urged by this same plaintiff in the case of Swing v. Humbird, supra, the claim made by him in this case seems to be a surprising one; for in that case he alleged in his complaint that the company was a mutual fire insurance company incorporated under the laws of Ohio May 27, 1887, and doing business as such during the years 1888, 1889, and 1890. The answer in that case alleged that the company never reorganized under the amendatory act of 1888, which was put in issue by the reply. The trial court found as a fact the allegation to be true. On appeal to this court the plaintiff assigned as error that the finding was not supported by the evidence, and in support of such assignment claimed that: "The court found that said insurance company had never reorganized in compliance with section 3650 of the Revised Statutes of Ohio, as amended April 14, 1888 (Laws 1888, p. 275), which went in force July 1, 1888. The evidence is uncontradicted, and is not attempted to be contradicted, that said insurance company did, on July 31, 188

pass a resolution adopting the by-laws providing exactly for the change in the business of said mutual insurance company."

But, this aside, the plaintiff now claims that there is a distinction between the incorporation of a company and its organization, and that the company here in question was organized under the act of 1888. It may be conceded that there is technically such a distinction. With this in mind, we have examined the evidence in this case, and find that it is amply sufficient to support the finding of the trial court to the effect that the company was organized under the original statute and that it was never reorganized. It is not our purpose to discuss the evidence in detail, but to refer to an item of evidence which the plaintiff seems to regard as conclusive in his favor. The record of a meeting of the company's board of directors, held August 18, 1888, contains this entry: "The secretary reported the result of his journey to Columbus, and that he had received for the company its proper certificate of authority to transact business. Resolved, that this company do accept the certificate of authority as issued by the commissioner of insurance and complete all necessary steps as soon as possible." The certificate of the commissioner of insurance, however, was dated June 30, 1888, one day before the amendment went into effect, and the testimony of the secretary of the company shows quite conclusively that the necessary steps referred to in the entry which were to be completed had reference to the completion of the organization of the company under the statute by virtue of which it was incorporated, and explains why the commissioner's certificate was dated June 30, 1888.

The part of the secretary's testimony relevant in this connection is as follows: "The opponents of the company endeavored to obstruct our organization by requiring that the changed law should take effect on its passage. I finally succeeded before the committee on insurance in having the date at which the law should take effect changed to the first day of July, and then and there made the arrangement with the superintendent of insurance, Hon. Samuel Kemp, and some of the members of the committee, that we would organize as of the thirtieth day of June, in the hope that we might by that time fully complete our $200,000 of notes as called for by our charter. The premium notes would be called upon for payment of one-fifth,

or $40,000; this leaving the net balance in the premium notes of $160,000. During the interval between the passage of the law and the 30th of June we had several interviews with the superintendent of insurance, and he came to the temporary office of the company and examined our work, and it was finally understood and agreed that our organization should take place as of the 30th day of June under the old law, as otherwise we should be compelled to change all of our notes to contingent liabilities, and the purpose and object of the company would in that way be destroyed."

Again, the by-laws of the company, which were adopted July 31, 1888, and never changed, show quite clearly that they had reference to the organization of the company under the act of its incorporation, and not the amendatory act. They are, upon their face, radically inconsistent with the amendatory act, and only consistent with the act of its incorporation. To illustrate: The act as amended required that companies organized under it must in their by-laws and policies fix by a uniform rule the contingent mutual liability of their members for losses and expenses at not less than three nor more than five cash premiums as written in the policy. Notwithstanding this mandatory provision, the company in question, by section 5 of its by-laws, expressly provided that: "No member shall be liable for losses or expenses or for any indebtedness of the company in any amount except to the extent of the premium notes given by him." Is it a sane suggestion that such a by-law was adopted pursuant to the statute which forbade it, and not with reference to the act of its incorporation, which permitted it?

We are also of the opinion that the further finding of fact of the trial court, to the effect that the company was not authorized to do business in this state, is sustained by the evidence. The insurance commissioner of this state issued to the company his certificates, which were offered in evidence by the plaintiff in rebuttal, to the effect that it was authorized to do business in this state. It appears, however, from each of the certificates, that it was granted upon the ground that "the character of the securities and the financial standing of said company conformed to the laws of this state regulating the business of mutual fire insurance." The statute in force when the certificates were issued was section 3199, G. S. 1894, which is in these

words: "No mutual fire insurance company, not of this state, shall do business in this state unless it shall be possessed of at least two hundred thousand dollars of actual cash surplus over and above all liabilities, including the reinsurance reserve fund required by the laws of this state. But mutual insurance companies of other states may be admitted in case the state where such insurance companies are located admit the mutual insurance companies of this state, by complying in all respects with the conditions and obligations imposed by such states on the mutual insurance companies of this state." The certificates of the insurance commissioner were only prima facie evidence of the right of the company to do business in this state. State v. Fidelity & Casualty Ins. Co., 39 Minn. 538, 41 N. W. 108.

Whether the evidence in a given case is sufficient to overcome the presumption arising from the act of the insurance commissioner is a question of fact for the trial court. Langworthy v. C. C. Washburn Flouring Mills Co., 77 Minn. 256, 259, 79 N. W. 974. In the case at bar the evidence is entirely satisfactory that the company did not possess the financial standing entitling it to do business in this state. This is not seriously controverted by the plaintiff; but he claims that there was no evidence to show that the company was not entitled to do business in this state under the proviso of the section we have quoted. There was no evidence in the case to show what the laws of Ohio were in reference to the admission of mutual fire insurance companies of Minnesota to do business in that state. If the insurance commissioner's certificates had been general in their terms, and to the effect that the company conformed to the requirements of the laws of this state relating to the business of mutual fire insurance, the contention of the plaintiff would be correct. Such, however, was not the case; for he only certified that the company had complied with the requirements of the statute in relation to the character of its securities and its financial standing. This express statement as to the facts upon which the certificates were based excludes all others, and makes it clear that they were not granted under the exceptions to the general prohibition of the section, but solely under the general provision thereof relating to the financial condition of the company.

We accordingly hold that each of the findings of fact of the trial court, to the effect that the company was organized under the original statute, that it never reorganized under the amendatory act, and, further, that the company was not authorized to do business in the state of Minnesota, are sustained by the evidence. It follows as a matter of law, from the fact that the company was so organized and never reorganized, that the plaintiff cannot recover from the defendant the alleged assessment. The alleged statutory contingent liability was not authorized by the act under which the company was incorporated and organized, but by the amendment of 1888, which expressly provided that its provisions in this respect should not apply to mutual companies then doing business, unless they elected to reorganize as provided by the amendatory act. Swing v. Humbird, 94 Minn. 1, 101 N. W. 938. The same conclusion follows from the fact that the company was not authorized to do business in this state. Seamans v. Christian Brothers Mill Co., 66 Minn. 205, 68 N. W. 1065; Swing v. Weston, 140 Mich. 344, 103 N. W. 816.

The last contention of the plaintiff to be considered is to the effect that the decree of the supreme court of Ohio making the assessment is conclusive upon the defendant upon the question of its liability to be assessed for the losses of the company, and that the trial court in this case, by refusing to give such conclusive effect to the decree, refused to give full faith and credit to the judicial proceedings of the state of Ohio, as required by section 1, art. 4, of the federal constitution. The decree was ex parte as respects the defendant, it having been made without notice to the defendant. The decree, then, the court having jurisdiction of the corporation, was conclusive as to all matters relating to the necessity for and the amount of the assessment; but it is not conclusive as to the question whether the contract relations of an alleged member to the company were such as to subject him to liability for the assessment. It did not, nor could it, deprive a member of the company of any defense going to show that he was not liable to be assessed for the losses of the company. Great Western Tel. Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986; Swing v. Weston Lumber Co., 205 U. S. 275, 27 Sup. Ct. 497, 51 L. Ed. 799; Swing v. Humbird, 94 Minn. 1, 101 N. W. 938. The second case cited was one where this plain-

tiff was seeking to enforce an assessment made by the decree here in question. The state court (see Swing v. Weston, 140 Mich. 344, 103 N. W. 816) gave effect to the defense that the company was not authorized to do business in that state, and for this reason the plaintiff could not recover. It was held by the supreme court of the United States that no federal question was presented by the record.

It follows that the decision of the trial court in this case, giving effect to the claim of the defendant that it never sustained any contract relations to the company making the defendant liable to an assessment for the losses of the company, was correct, and that it violated no provisions of the constitution of the United States.

Judgment affirmed.