# JAMES W. BOTHWELL AND OTHERS v. BUCKBEE, MEARS COMPANY.[1]

March 5, 1926.

No. 24,884.

**Minnesota courts should not enforce contract for insurance made by foreign company not complying with its laws, although policy was issued in another state upon written application mailed from Minnesota.**

1. When it appears that a foreign insurance company had not complied with any of the requirements of the statutes of Minnesota applicable to companies writing insurance against risks arising in the state, its courts should not lend their aid to the enforcement of a contract of insurance indemnifying a citizen of Minnesota against "strike losses" sustained therein, although the policy of insurance was issued in another state upon the written application of the insured made in this state and mailed to the home office of the insurance company.

**Such contract is not interstate commerce.**

2. Entering into a contract of insurance in the manner above described is not interstate commerce. The policy is a simple contract of indemnity and its interstate character does not give it immunity from state control.

Judicial Comity, 11 C. J. p. 1236 n. 96.
Commerce, 12 C. J. p. 21 n. 35.
Insurance, 32 C. J. pp. 975 n. 6; 998 n. 49.

Action in the district court for Ramsey county to recover amount of defendant's assessment made pursuant to the terms of an insurance policy. The case was tried upon stipulated facts before Bechhoefer, J., who ordered judgment in favor of plaintiffs. Defendant appealed from an order denying its motion for a new trial. Reversed.

*Oppenheimer, Peterson, Dickson & Hodgson* and *Montreville J. Brown*, for appellant.

*Barrows & Metcalf*, for respondent.

[1]Reported in 207 N. W. 724.

LEES, C.

The plaintiffs are the receivers of an insolvent insurance company whose business it was to insure employers of labor against loss by reason of strikes on the part of their employes. The defendant is a Minnesota corporation operating a printing establishment in the city of St. Paul. After a trial by the court, judgment in plaintiffs' favor was ordered, and defendant appealed from an order denying a new trial.

A representative of the insurance company came to St. Paul and, at a public meeting, made certain representations as to the desirability of the kind of insurance written by the company and distributed its blank applications for membership and insurance. Defendant received one of the applications, filled it out and sent it, with a check for the first premium, to the home office of the company in Baltimore, where the policy was written and then sent to defendant by mail.

The policy provided that the insured should be liable for assessments if the premiums charged were not sufficient to pay losses. They proved to be insufficient, the company became insolvent, receivers were appointed, the policyholders were assessed, and this action was brought to recover the amount of defendant's assessment. The defense is that the company never complied with the insurance laws of this state.

The question to be decided is this: Can a foreign insurance company, or receivers appointed in liquidation proceedings, maintain an action against the insured in a court of this state to collect an assessment, when it appears that the company failed to comply with the provisions of the statute regulating the business of insurance?

The trial court answered the question in the affirmative, saying "upon the authority of Minn. Com. Men's Assn. v. Benn [261 U. S. 140], it is held that in issuing its policy to the defendant, the insurance company was not doing business in this state and in consequence it was not obliged to comply with the statutory provisions of this state relating to the right of foreign insurance companies to do business here." Unless the Benn case controls the decision of

the case at bar, the question above stated must be answered in the negative.

In Seamans v. Christian Bros. Mill Co. 66 Minn. 205, 68 N. W. 1065, the court had before it the identical question presented here. It was there held that an insurance company which had not complied with the statutory requirements so as to be authorized to do business in this state could not recover a premium on a contract insuring property in this state whether the contract was made within or without the state. In the course of the opinion it was said that the statutory provisions are police regulations intended to protect the people of this state against irresponsible insurance companies and to compel all insurance companies doing business in the state or taking risks on property therein to comply with our local laws; that, if the public policy of the state prohibits the making of a certain contract and the contract is made elsewhere, the state is not bound to enforce it by extending to it the comity which exists between states; that the laws and public policy of the state may destroy this comity, and especially so if the contract was to be performed within the state although it was made elsewhere.

Swing v. Red River Lbr. Co. 105 Minn. 336, 342, 117 N. W. 442, cites the Seamans case with approval.

The doctrine there announced prevails in Wisconsin. Rose v. Kimberly & Clark Co. 89 Wis. 545, 62 N. W. 26, 27 L. R. A. 556, 46 Am. St. 855; Presbyterian M. F. v. Thomas, 126 Wis. 281, 105 N. W. 801, 110 Am. St. 919. In the Rose case the court remarked that the evil which the insurance statutes seek to correct is not the writing of the policy within the state by an unlicensed company, but the writing of such a policy at all. The same doctrine prevails in Michigan. Swing v. Cameron, 145 Mich. 175, 108 N. W. 506, 9 L. R. A. (N. S.) 417, 9 Ann. Cas. 332; in Iowa, Seamans v. Zimmerman, 91 Iowa, 363, 59 N. W. 290. And in Pennsylvania, Swing v. Munson, 191 Pa. St. 582, 43 Atl. 342, 58 L. R. A. 223, 71 Am. St. 772. The basis upon which it rests is that the principle of judicial comity does not require a state court to lend its aid in the enforcement of contracts which interfere with and tend to frustrate the

policy established by the legislature. Commonwealth Mut. Fire Ins. Co. v. Hayden, 60 Neb. 636, 83 N. W. 922, 83 Am. St. 545.

These decisions must be read in conjunction with Allgeyer v. Louisiana, 165 U. S. 578, 580, 17 Sup. Ct. 427, 41 L. ed. 832, in which the court condemned a state statute which subjected to a fine any person who did an act within the state intended to effect for himself or for another insurance on property in the state in a marine insurance company which had not complied with the laws of Louisiana. In the opinion of the court, it was said that it may be conceded that the right to contract in relation to persons or property within the jurisdiction of the state may be regulated and sometimes prohibited if the contract conflicts with the policy of the state as contained in the statutes. But the power cannot extend to prohibiting the citizens from making contracts outside the limits and jurisdiction of the state *which are also to be performed outside of such jurisdiction.* The words italicized are significant and indicate that the court intended to limit the application of the rule announced to cases in which a foreign insurance company does not engage to perform its part of the contract in the state where the insured resides and in which the property insured is situated.

The policy of the legislature is expressed in G. S. 1923, § 3314, as follows:

"It shall be unlawful for any  *  *  *  corporation to solicit or make or aid in the soliciting or making of any contract of insurance not authorized by the laws of this state. All contracts of insurance on property, lives, or interests in this state, shall be deemed to be made in this state."

G. S. 1923, § 3722, also throws light on the subject. It permits a citizen of this state to take insurance in an unlicensed company by giving a bond to the insurance commissioner for the payment of a tax on the premium charged for the insurance. When the bond is given, the commissioner issues a license good for one year and the insurance is declared to be valid.

Other statutory requirements need not be stated in detail. It is sufficient to say that they require, among other things, that a for-

eign insurance company must secure a license to do business in this state; deposit with the insurance commissioner a certified copy of its charter and by-laws and a statement showing its financial condition; file an instrument in the office of the commissioner appointing him, or his successor in office, its attorney in fact upon whom proofs of loss and process in any action or legal proceeding may be served; make a deposit of securities with the commissioner for the protection of Minnesota policyholders, or file a certificate by the insurance commissioner of the state of its organization that it has deposited with him securities in a required amount for the protection of all its policyholders. G. S. 1913, §§ 3309, 3591, 3592, 3593, 3595, and L. 1921, p. 573, c. 380.

In the case at bar the risk insured against was one to be encountered in this state. It was incidental to the operation of defendant's printing establishment in St. Paul. If there were a loss, it would be sustained in this state. The policy is not in the record and we do not know where the loss, if one occurred, was to be adjusted or paid. If the contract was to be performed in Maryland, it may be true that the courts of this state could not refuse to enforce it and that such a refusal would contravene certain provisions of the Federal Constitution. Stone v. Old Colony St. Ry. Co. 212 Mass. 459, 99 N. E. 218; N. Y. Life Ins. Co. v. Head, 234 U. S. 149, 34 Sup. Ct. 879, 58 L. ed. 1259. In the present case there is no showing that the contract was not to be performed in Minnesota, hence these cases are not controlling.

We come now to Minn. Com. Men's Assn. v. Benn, supra. In that case a Minnesota corporation issued an accident and health certificate to Robert J. Benn of Montana. Upon his death his widow brought an action in a Montana court to recover the sum due under the certificate of membership. Service of the summons and complaint was made upon the secretary of state and insurance commissioner of Montana. The association did not appear or defend and judgment went against it by default. Thereafter Mrs. Benn brought an action in this state upon the Montana judgment. We held that the Montana court had jurisdiction to enter the judg-

ment, and the case was carried to the United States Supreme Court. The opinion of Mr. Justice McReynolds sets out the facts as follows:

The only office maintained by the association was located in Minneapolis; its business was transacted there; it owned no property and had not secured permission to do business in any other state; it had printed forms of application for membership which, when filled out, were sent to the home office and submitted to the board of directors for approval; Benn's application was sent by mail from Kalispell, Montana, to Minneapolis, was approved, and his certificate of membership issued and mailed to him; assessments and dues were payable at the Minneapolis office; new members were procured by advertisement and through the solicitation of older members, who were urged to furnish lists of prospects and to use their influence to increase the membership, but no member had authority to bind the association; no paid solicitors or agents were employed; proofs of loss were sent to the home office and adjusted there by the directors and losses were settled by checks on Minneapolis banks mailed from the home office. Upon this state of facts the court concluded that the association was not doing business in Montana; had not subjected itself to the jurisdiction of the courts of that state and was not present within the state when service of the summons was made on the state officers mentioned, hence a personal judgment against the association based on such service was void for want of jurisdiction.

In the case at bar an entirely different situation is presented. The insurance company has not been sued. Through its receivers, it is the plaintiff in an action brought against a citizen of this state to enforce an obligation incurred upon a contract alleged to have been made in another state, the subject matter of which was the insurance of a Minnesota corporation against losses it might sustain in carrying on its business within the state.

We conclude that Seamans v. Christian Bros. Mill Co. supra, should be followed and that we should give effect to the public policy of the state as expressed in the statutes to which we have

referred, until the Supreme Court of the United States disposes of the question differently.

It has been suggested that the transaction in question was one in interstate commerce and beyond the control of the state, but such is not the case. Issuing a policy of insurance is not a transaction of commerce. The policy is a simple contract of indemnity and its interstate character does not give it immunity from state control. See N. Y. Life Ins. Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. ed. 1116, where the earlier decisions so holding are collated.

The order denying a new trial is reversed.


On March 19, 1926, the following opinion was filed:


PER CURIAM.

After filing the foregoing opinion, our attention was called to St. Louis C. Co. v. Arkansas, 260 U. S. 346, where a statute of the state of Arkansas somewhat similar to G. S. 1923, § 3722, was held to be in conflict with the Fourteenth Amendment to the Federal Constitution. We referred to section 3722 and to other statutory provisions as evidence of the legislative policy in dealing with foreign corporations writing insurance on risks in this state. The validity of the statute was not considered but, to avoid the possibility of misunderstanding, we append this note to the opinion.