## KEEHN v. BRADY TRANSFER & STORAGE CO.

### No. 9115.

Circuit Court of Appeals, Seventh Circuit.

Jan. 7, 1947.

Rehearing Denied Feb. 5, 1947.

384

D. J. Fairgrave and Howard A. Steele, both of Des Moines, Iowa, and David Axelrod, of Chicago, Ill. (Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, Iowa, of counsel), for appellant.

Wm. H. Beckman, Charles F. Hough, George H. Braasch, Ira W. Hurley and Ferre C. Watkins, all of Chicago, Ill., for appellee.

Before MAJOR and MINTON, Circuit Judges, and BALTZELL, District Judge.

MAJOR, Circuit Judge.

This is an appeal by the defendant from a summary judgment entered March 13, 1946 on plaintiff's motion. The action was instituted and a recovery sought by the plaintiff as receiver of an Illinois mutual insurance company to collect from the defendant, a former policyholder of the State of Iowa, an assessment levied in the amount of 100% of the premiums paid by the defendant during the policy period.

Inasmuch as the questions raised on this appeal are solely legal in nature, it is unnecessary to state the facts any further than they bear upon such questions. The policy in suit was issued by the Central Mutual Insurance Company, formerly a mutual insurance company organized under the laws of Illinois, to the defendant, an Iowa corporation with its principal place of business at Fort Dodge, Iowa, engaged in inter-state and intra-state carriage for hire. The policy, dated September 7, 1935, was countersigned and delivered to the defendant at Fort Dodge by the authorized agent of Central Mutual, and was cancelled according to its terms by Central Mutual on August 16, 1936. By the terms of the policy defendant was insured against liability arising out of the operations of its motor carriers in consideration of the payment of a deposit premium of $1,600.00, plus a fixed percentage of defendant's gross receipts computed and payable monthly. The policy provided: "The contingent liability of the assured hereunder is limited to one time the premium named herein and no more. The assured is given and hereby accepts notice that by virtue of this policy he is a member of the Central Mutual Insurance Company of Chicago * * *."

During the period the policy purported to be in effect premiums were paid by the defendant in the amount of $9,280.73, which included the deposit premium of $1,600.00. During such period defendant reported a number of claims to Central Mutual which were investigated by the latter, some of which claims were compromised and settled. The judgment rendered was for defendant's asserted liability under the contingent provision of the policy and was for the same amount which defendant had

theretofore paid in premiums, together with interest from a certain date.

Central Mutual has been in the process of involuntary liquidation in the Circuit Court of Cook County, Illinois, since January 11, 1937. The instant action is to recover an assessment levied against the defendant and other policyholders in a proceeding wherein the defendant was not a party. At all times during the policy period Central Mutual was licensed and authorized by the Insurance Commissioner of Iowa to transact insurance business in that state. The policy was issued without any application having been made or signed by the defendant.

Of the numerous defenses interposed in the lower court only two are relied upon here, referred to as defendant's third and fourth separate defenses. By the former, it is contended that the policy was issued in violation of certain provisions of the Iowa statute and is therefore void. By the latter, it is contended that plaintiff's failure to comply with a provision of the Iowa statute pertaining to contingent liability relieves the defendant of such liability.

██ This being an appeal from a summary judgment, it is well to keep in mind that the only question with which we are concerned is whether the allegations of defendant's answer were such as to raise a material or genuine issue of fact. A material or genuine issue of fact is raised when the facts alleged, if proven, are such as to constitute a legal defense. The lower court concluded that the allegations of defendant's answer, if proven, did not constitute a legal defense, and therefore no material or genuine issue of fact was raised. The propriety of the court's conclusion in this respect must be determined on this appeal.

We shall first consider defendant's third defense, which involves Secs. 8955 and 8956 of the Code of Iowa, 1935. Sec. 8955 is entitled "Foreign mutual companies—surplus," and provides: "Any mutual insurance company organized outside of this state * * * may be admitted to this state and authorized to transact herein any of the kinds of insurance authorized by its charter * * *, when so permitted by the provisions of this chapter * * *; pro-

vided, however, such company * * * is also solvent according to the requirements of this chapter and is possessed of a surplus safety invested as follows: * * *."

Sec. 8956 is entitled "Certificate to foreign company," and provides: "When any foreign company has fully complied with the requirements of law and become entitled to do business, the commissioner of insurance shall issue to such company a certificate of that fact, which certificate shall be renewed annually on the first day of April, if the commissioner is satisfied that capital, securities, and investments of such company remain unimpaired, and the company has complied with the provisions of law applicable thereto."

Defendant in its answer as its third defense pleaded these statutory provisions; conceded that Central Mutual was authorized by the Commissioner of Insurance of the State of Iowa to write insurance in that state, but alleged as a matter of fact that it was hopelessly insolvent during all of such period, and that it obtained such license by fraud and deception in that it misrepresented to the Insurance Commissioner its true financial condition, and that by reason thereof Central Mutual was not legally authorized to write said policy of insurance in the State of Iowa and as a result the policy was void and of no legal effect.

The parties concede that the question must be decided in accordance with the law of the State of Iowa, and they also agree that there is no adjudicated case in that state exactly in point, although both cite cases from that state which it is claimed by analogy and reasoning support their respective contentions.

We shall first consider the cases relied upon by the defendant. In Pennypacker v. Capital Ins. Co., 80 Iowa 56, 45 N.W. 408, 8 L.R.A. 236, 20 Am.St.Rep. 395, the suit was to recover upon a fire insurance policy issued to plaintiff covering property in Pennsylvania. Both of the parties to the suit were residents of Iowa. The defendant pleaded as a defense that it was not authorized to do business in the State of Pennsylvania, that its policy was issued in violation of the laws of that state and there-

fore void. The court stated and recognized as the general rule (45 N.W. 409): " 'The well-settled general rule is that, when a statute prohibits or attaches a penalty to the doing of an act, the act is void, and will not be enforced * * *. Or, in other words, a penalty implies a prohibition though there are no prohibitory words in the statute, and the prohibition makes the act illegal and void.' " The court, however, in deciding against the defendant's contention found under the facts of the case an exception to this general rule and the tenor of the opinion is that an insurance company should not be permitted to take advantage of its own wrong. The court said: "The evident purpose of such a law is the protection of those paying for insurance upon property in that state. The prohibition and penalty is against the company only. No duty is required of the insured, and no act upon his part expressly prohibited. * * * A number of cases are cited by appellant [insurance company] where, in actions brought by the insurance company to enforce rights under the contract of insurance, it was held that statutes similar to that set out were prohibitory and the contracts void; but in none of those cases is it held that they are void as to the assured." It thus appears to be the reasoning of the court that the statutory provision being for the protection of the assured, a policy issued in contravention thereof is void only as to the company. In other words, it appears to be the reasoning that the insured may defend an action by the company on the ground that the policy is void but that such defense is not available to the company when the suit is against it.

In Seamans v. Zimmerman, 91 Iowa 363, 59 N.W. 290, a suit was brought by the receiver of a Wisconsin Mutual Fire Insurance Company to recover assessments made in accordance with the terms of the policies which provided, as does the policy in the instant case, that the defendant became a member of the company and liable for such assessments. The suit was defended on the ground that the Wisconsin company had failed to comply with the Iowa statute regarding its financial condition. The court, in sustaining such defense, stated (59 N.W. 291): "The prohibition of section 1144 is directed not merely to the agents as such, but to the companies themselves. They are forbidden to take any risks in this state, either directly or indirectly. The general assembly intended the prohibition to reach as far as its jurisdiction extends. The power of the legislature of a state to make contracts like those under consideration void is not questioned. * * * To hold that the company may recover the assessments would be an evident violation of the spirit and intention of the statute. The contracts are contrary to the policy of this state as expressed in the statute, and the courts of this state will not aid the company to enforce them."

Thus the court adhered to the general rule which it had announced in the Pennypacker case, supra. It reached a different result, however, as in that case the company was defending because of its own wrong, that is, its violation of the Pennsylvania statute, while in the case under consideration the company was attempting to recover from a policyholder notwithstanding its failure to comply with the Iowa statute. In the Seamans case, the court, after holding the policy void as to the company and denying its right to recover, further evidenced the distinction between the rights of a policyholder and those of the company by stating (59 N.W. 291): "What rights, if any, the policyholder might have under such policies, we do not find it necessary to determine. See, however, Pennypacker v. Capital Insurance Company, 80 Iowa [56,] 57, 45 N.W. 408."

In Barker v. Lamb & Sons, 99 Iowa 265, 68 N.W. 686, 34 L.R.A. 704, the suit was brought by the receiver of a defunct mutual fire insurance company of Chicago to recover assessments on a policy issued in the State of Iowa. The defense was that it was not authorized to transact business in that state because of its financial condition and that the policy was issued in violation of the statutory provision of the state. The court, in sustaining the defense, stated (68 N.W. 687): "The contract of insurance, so far as the right of the company to

insure property in this state is involved, was void. * * * If the rule contended for by counsel for appellant in this case were to be adopted by this court, it would be in direct conflict with the legislative policy of this state. We have already determined this question in Seamans v. Zimmerman [91 Iowa 363,] 59 N.W. 290, where we held that a foreign insurance company, not having complied with the statute above cited, cannot recover assessments under the policy of insurance issued on property in this state."

■■■ Thus, we think it is well settled by the Supreme Court of Iowa that a policy issued by a foreign insurance company while insolvent, in violation of the statutory provision of that state, is void and no recovery can be had thereon. Numerous cases from other jurisdictions are cited to the same effect. Seamans v. Christian Bros. Mill Co. 66 Minn. 205, 68 N.W. 1065; Swing v. Munson, 191 Pa. 582, 43 A. 342, 58 L.R.A. 223, 71 Am.St.Rep. 772, and Swing v. Weston Lumber Co., 140 Mich. 344, 103 N.W. 816. In the Seamans case, the Minnesota court stated (68 N.W. 1066): "The very object of these statutory provisions is the protection of the insured, and the parties are not in pari delicto." In the Weston Lumber Co. case, the Supreme Court of Michigan stated (103 N.W. 818): "The object is to protect the citizens of this state against irresponsible companies, and to prevent insurance by unauthorized companies upon property in this state." In the Munson case, the Supreme Court of Pennsylvania had before it a contention such as is made in the instant case, that is, that the insured had the benefit of the contract and should not be permitted to escape payment of assessments made after the company was placed in the hands of a receiver. The court stated (191 Pa. 588, 43 A. 344, 58 L. R.A. 223, 71 Am.St.Rep. 772): "This argument would have weight if the parties alone concerned were Munson and the insurance company; but, in enforcing a policy in the interests of the whole public, the law takes but little note of the conduct of the immediate parties to the contract. The rule is, that courts, having in view public inter-ests, will not lend their aid to the enforcement of an unlawful contract."

The plaintiff seeks to distinguish these decisions, including those of the State of Iowa, upon the sole ground that in those cases no attempt was made to comply with the law authorizing the insurance company to do business in Iowa, while in the instant case plaintiff had obtained a license to so do. Unfortunately, no court of Iowa, so far as we are advised, has considered a case with this so-called distinguishing feature. We therefore must utilize such pertinent reasoning as the Iowa courts have employed, as well as those of other jurisdictions, in determining the law of that state. Plaintiff argues that the fraud alleged was upon the Commissioner of Insurance of the State of Iowa, and, there being no privity between the Commissioner and the defendant, such fraud cannot be taken advantage of by the latter. We think this argument is beside the point. The defense here is not predicated upon a fraud perpetrated on the Commissioner of Insurance but upon the alleged fact that the policy was issued in violation of the Iowa statute designed for the protection of the defendant (and other policyholders), and that as a result the policy was void from its inception as to the company or any rights it might have thereunder.

The Iowa courts having held that a policy issued by an insolvent insurance company in contravention of its statutory prohibition is void, we are unable to discern how a company which obtains a license by fraud and deception is in any better or different position. The wrong which has been done the policyholder of Iowa is just as pronounced in one instance as in the other. An acceptance of plaintiff's contention is to put a premium upon the fraud and deception practiced upon the Insurance Commissioner and to enable plaintiff to thwart, by its own wrong, the statutory provision designed by the State of Iowa for the protection of its citizens. To put it more bluntly, the policy which it issued, otherwise void insofar as the defendant is concerned, is to be endowed with some sort of legal status because of plaintiff's ability

to obtain from the Commissioner of Insurance by fraud and deception that to which it was not entitled. We suppose that if the authority to do business in Iowa had been obtained by bribery or any other form of chicanery the same contention could be made. We are of the view that no court would or should permit such an incongruous result.

While, as stated, Iowa has not passed upon this precise question, there are two cases from other jurisdictions which have. In Swing v. Red River Lumber Co., 105 Minn. 336, 117 N.W. 442, the court had before it an action by the trustee of an insolvent mutual fire insurance company to recover an assessment purportedly made by decree of an Ohio court for the payment of losses of the company, which had been organized in Ohio. The company had obtained from the Commissioner of Insurance of Minnesota a certificate authorizing it to do business in that state. It failed, however, to maintain the requisite financial status of companies transacting business in Minnesota. Thus it will be observed the situation is almost identical with that of the instant case. The court denied the receiver's right to recover on the ground that the company's failure to maintain its financial standing as required by statute invalidated any policy which it issued in the state, insofar as any right which it might have thereunder was concerned. In the course of its opinion the court stated (117 N.W. 444): "We are also of the opinion that the further finding of fact of the trial court, to the effect that the company was not authorized to do business in this state, is sustained by the evidence. The Insurance Commissioner of this state issued to the company his certificates, which were offered in evidence by the plaintiff in rebuttal, to the effect that it was authorized to do business in this state. It appears, however, from each of the certificates, that it was granted upon the ground that 'the character of the securities and the financial standing of said company conformed to the laws of this state regulating the business of mutual fire insurance.'"

Thus a finding of the trial court that plaintiff was not authorized to do business in the state was sustained, notwithstanding the fact that plaintiff had obtained a certificate from the Insurance Commissioner. The court further stated (117 N.W. 444): "The certificates of the Insurance Commissioner were only prima facie evidence of the right of the company to do business in this state. * * * Whether the evidence in a given case is sufficient to overcome the presumption arising from the act of the Insurance Commissioner is a question of fact for the trial court."

Plaintiff attempts to convert to its own advantage the statement just quoted by arguing that in the instant case the evidence "on behalf of the defendant was not sufficient to overcome the presumption arising from the act of the Commissioner of Insurance of the State of Iowa in issuing the certificate authorizing Central Mutual to do business in Iowa." This argument grossly misconceives the situation. In the Swing case, as noted, the prima facie right attending the issuance of the certificate was overcome by proof that it was improperly obtained. Of course, in the instant case no proof had been made on this or any other issue. We are here concerned only with the allegations of the answer and not proof. Whether the defendant establishes the allegations of its answer will present a question of fact for the trial court. If it does so establish, the holding in the Swing case will be in point.

Keehn v. Hodge Drive-It-Yourself, Inc., OhioApp., Hamilton County, 53 N.E.2d 69, involved a suit brought by the same plaintiff as in the instant case to recover an assessment against a policyholder in the State of Ohio. The company had been authorized to do business in that state just as it had been in the State of Iowa. Ohio also had a statute similar to that of Iowa, prescribing the qualifications to be met by a foreign insurance company in order to do business in that state. After discussing the contention as to the plaintiff's insolvency at the time it issued its policy in Ohio, the court stated (53 N.E.2d at page 72): "If this be true the Company was operating illegally in Ohio under the statute quoted above, and if insolvent at the time defendant bought the policy, surely defendant is

entitled to defend on that ground, as well as any other personal grounds over which the Ohio Court has jurisdiction * * *."

The trial court in the instant case recognized that the Swing and Keehn cases (the last two cases to which we have referred) "hold squarely that even though an insurance company has formally qualified to do business in a state, its pre-existing insolvency may be asserted by a policyholder to resist assessment liability." The court, in expressing its disagreement with the reasoning of these cases, stated: "Justice and sound public policy require that no distinction should be made between policyholders in the company's home state and those in states where the company is doing business with the permission of the proper authorities." Just what "public policy" the court had in mind we are not advised. Certainly the State of Iowa had a right for the protection of its citizens to prescribe the conditions on which an insurance company could do business in that state, irrespective of the conditions imposed by some other state. It would seem equally certain that there is no public policy of Iowa or any other state which would permit an insurance company to take advantage of its own fraud and deception. The trial court continued: "The real issue in the case, therefore, is the alleged fraud of the company's officials in concealing the company's insolvency and continuing to do business." A more accurate statement of the issue is whether the company's fraud and deception in procuring its license to do business in Iowa can be utilized as an excuse for ignoring the statutory prohibition which the state had erected against it.

Plaintiff, in support of its position as to this third defense, places its whole reliance on Sherman v. Frasier, 112 Iowa 236, 83 N.W. 886, and Corey v. Sherman, 96 Iowa 114, 116, 64 N.W. 828, 32 L.R.A. 514. In both of these cases the parties, that is, the insurance companies and policyholders, were residents of the State of Iowa. Thus no question was involved as to the effect to be given a policy written by a foreign company in contravention of the laws of that state. This alone is sufficient, in our judgment, to distinguish them from and to render them worthless as authorities in the instant case.

In the Sherman case, the suit was by the assignee of a mutual insurance company against members on their premium notes or pledges (not to recover a contingent liability as in the instant case). The defendants pleaded that the company's agents misrepresented the financial condition of the company and as a result thereof the policies were void. The court held (83 N.W. 887): "The effect of the frauds alleged is not to render the contract void, but voidable at the instance of the appellants." The court goes on to point out that no question was raised by the policyholders until the filing of their answer in court, which was six years after the policies were issued, and that it was then too late for them to repudiate the contracts. The court then cites and discusses Corey v. Sherman, supra, another case where the policyholders sought to escape liability upon notes and pledges for the reason that they were obtained by the company through fraud and misrepresentation, and where the court employed the same line of reasoning. In each of these cases, the court proceeded upon the theory that the contracts were merely voidable and, as such, binding upon policyholders unless disaffirmed by them within a reasonable time. They are neither in conflict with nor analogous to the Iowa cases heretofore cited holding that insurance policies issued by a foreign company in violation of the statutory provisions of the state are void as to the company and not enforceable against the policyholders.

Defendant's fourth defense as alleged in its answer is that the defendant was never requested to sign and did not sign any application for insurance with Central Mutual as required by Sec. 8909 of the Code of Iowa 1939, entitled "Maximum premium," which provides: "The maximum premium payable by any member of a mutual company shall be expressed in the policy and in the application for the insurance." Defendant contends that in the absence of an application stating the maximum premium, no contingent liability was incurred. In fact, defendant argues that the maximum premium was not stated in the policy, but

we pass by this argument and consider the more controversial one as to whether the failure to obtain an application relieves the defendant of contingent liability.

Plaintiff's sole answer to this defense is that there are other sections of the Iowa Code which render Sec. 8909 of no consequence. The sections relied upon are 8974 and 8975. The former requires that an application for insurance be attached to the policy. The latter, entitled "Failure to attach—effect," provides: "The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with requirements of section 8974 it shall forever be precluded from pleading, alleging, or proving any such application or representations, or any part thereof, or falsity thereof, or any parts thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option."

■ We think plaintiff's contention misconstrues both the purpose and language of these provisions. Secs. 8974 and 8975 do not relieve the insurance company of the requirement that an application be taken as required by Sec. 8909. In fact, they presuppose that such application has been obtained, and taken together mean only that an insurance company is required to attach such application to the policy as a prerequisite to its right to take advantage of any misrepresentation contained therein.

Plaintiff emphasizes that there is no decision construing Sec. 8909. We think there is nothing to construe. It states in plain unambiguous language that the maximum premium "shall be expressed in the policy and in the application." The question is whether this requirement should be given effect. Undoubtedly the lawmakers of Iowa designedly employed this language for the protection of those who might become members of mutual companies. In providing such protection they were not content that the maximum premium be stated in the policy only, but required that it be stated also in the application. If the maximum premium had not been stated in the policy, we doubt if it would be contended that defendant assumed any contingent liability. See Keehn v. Parrish Dray Line et al., 4 Cir., 145 F.2d 646. The failure to include such maximum premium in the application leads to the same result because the State of Iowa has said that it must be stated in both the policy and the application.

■ It is our view that compliance with Sec. 8909 is a prerequisite to the creation of a contingent liability. The District Court, in discussing this provision, stated [64 F.Supp. 392, 397]: "It is not clear that the import of this statutory provision is to make an application a condition precedent for a valid insurance policy." This reasoning mistakes the issue. It is not a question of whether a valid insurance policy may be issued without an application but whether such policy may impose a contingent liability without an application, informing the policyholder of the maximum premium for which he may be liable. Even though the policy be valid, the assessment provision is not enforceable because of a failure to comply with a requirement of the statutory provision pertaining thereto.

It is therefore our view and we so hold that the facts alleged in both the third and fourth defenses, if proven, constitute a legal defense to the cause of action stated by the plaintiff. It follows, therefore, that the plaintiff's motion for a summary judgment should have been denied.

The judgment appealed from is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.